In re Mikels

---

IN THE MATTER OF BRENDA DARLENE MIKELS

No. 769DC361

(Filed 17 November 1976)

1. **Infants § 1; Insane Persons § 1— commitment of juvenile to mental health care facility — authority of juvenile division of district court**

    The juvenile division of the district court does not have the authority to commit a minor directly to a State mental health institution under G.S. 7A-286(6), since the only statutory provisions for commitment to mental treatment facilities are set forth in Articles 4 and 5A of Chapter 122, which provide for hearings to be held within strict time limits, with counsel provided for indigents, with procedural safeguards, to determine that the juvenile is mentally ill and in need of treatment.

2. **Constitutional Law § 30; Infants § 1— due process protections afforded juveniles**

    Juveniles are entitled to the same due process protections as adults in any proceeding where a loss of liberty is a possible result.

3. **Infants § 1; Insane Persons § 1— commitment of juvenile to mental health care facility — jurisdiction of court to hold rehearing**

    Since the Granville County Court was required by G.S. 122-58.11 to hold rehearings on all patients involuntarily committed to John Umstead Hospital and since the original order of the Durham County Court committing respondent to the hospital was void, then the Granville County District Court properly had jurisdiction over the respondent, had statutory authority to determine whether her commitment should be extended, and acted properly in ordering that she had been improperly committed and that she should be immediately released until committed in accordance with the statutory requirements.

APPEAL by respondent from *Peoples, Judge.* Judgment entered 23 January 1976 in District Court, GRANVILLE County. Heard in the Court of Appeals 14 September 1976.

In response to a juvenile petition filed 20 January 1975 on behalf of the Durham County Department of Social Services, Brenda Darlene Mikels, a child, was placed in John Umstead Hospital for 60 days of interdisciplinary evaluation by order of the Durham County Juvenile Court dated 31 January 1975. On 27 March 1975, an amended petition was filed alleging that, based on her behavior of setting fires, assaulting others and destroying property while at the hospital, the respondent was undisciplined, delinquent, and in need of the care, protection, or discipline of the State. By order dated 4 April 1975, Judge Read of the Durham County District Court, purporting to act

pursuant to G.S. 7A-286, committed respondent to John Umstead Hospital beginning 6 April 1975 and ordered her to remain there until further order of that court.

On 4 November 1975 a request for rehearing of involuntary commitment pursuant to G.S. 122-58.11, was filed by the hospital. After a hearing held on 23 December 1975 at John Umstead Hospital, an order was entered by Judge Linwood T. Peoples of the Granville County District Court finding that respondent had been improperly committed to the hospital under G.S. 7A-286 by the Durham County District Court since she had not been admitted pursuant to either Article 4, or Article 5A of Chapter 122, and ordering that she be immediately released until such time as the proper statutory procedures were followed. Notice of appeal was given and a stay was granted by the trial court pending appeal.

*Attorney General Edmisten, by Special Deputy Attorney General William O'Connell and Associate Attorney Patricia H. Wagner, for the State.*

*Paul, Rowan & Galloway, by James V. Rowan, for respondent appellant.*

MARTIN, Judge.

[1] The ultimate issue presented by this appeal is whether the juvenile division of the district court has the authority to commit a minor directly to a State mental institution under G.S. 7A-286 (6). The answer is no.

Appellant and appellee both seem to agree that respondent is in need of treatment for mental illness. The record on appeal is lengthy and we do not believe a review of the facts is necessary for an understanding of the question raised.

Judge Peoples made extensive findings of fact from which he concluded:

"1.  The 1971 amendment to G.S. 7A-286 (6) removed the power which juvenile judges previously had to commit a juvenile directly to a mental institution and required that the provisions of Chapter 122 control all commitments to mental treatment facilities.

"2.  The amendment to G.S. 7A-286 (6) which became effective July 1, 1974, as quoted in Finding of Fact No. 7,

particularly the language, 'In no case will a child be committed directly to a State hospital or mental retardation center,' clearly indicates that the only statutory provisions for commitment to mental treatment facilities are those provided in Articles 4 and 5A of Chapter 122.

"3. The addition of Section 122-56.7 to Article 4 of Chapter 122 by the 1975 session of the General Assembly is further indication that commitment for mental illness shall be governed by the procedures of Chapter 122 and subject to the due process protections of that chapter, including the requirement of Section 122-58.11 that rehearings be held at regularly prescribed intervals.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

"1. The respondent, Brenda Darlene Mikels, was improperly committed to John Umstead Hospital and shall be immediately released until such time as she is properly admitted or committed in accordance with either Article 4 or Article 5A of Chapter 122.

"2. Since the Durham County District Court had no statutory authority to commit the respondent to John Umstead Hospital under G.S. 7A-286, a rehearing under Section 122-58.11 is not required, and this hearing is hereby dismissed."

Prior to the 1971 amendments to this statute, a juvenile judge had the authority to commit a delinquent minor directly to a mental institution upon the certification of two physicians (former subsection 5 of G.S. 7A-286). There were few or no requirements for a hearing, appointment of counsel, a "clear cogent and convincing" standard for a specific finding of mental illness and dangerousness, or a rehearing within a definite time period. Neither were all these requirements found in the mental commitment laws, Chapter 122 of the General Statutes.

There was, however, growing concern that there should be adequate procedures to protect individuals threatened with a loss of liberty, a basic constitutional right. This was evident both in the courts and in the legislature. This Court, for example, found certain sections of the State commitment statutes as they existed in 1971-72 unconstitutional for lack of adequate

In re Mikels

procedural safeguards in *In re Confinement of Hayes,* 18 N.C. App. 560, 197 S.E. 2d 582 (1973), (cert. denied and appeal dismissed), 283 N.C. 753, 198 S.E. 2d 729 (1973).

The language of 7A-286 was changed by the 1971 Session of the General Assembly to provide that "the court may cause the mental health director to arrange admission or commit the child to the appropriate state or local facility." Moreover, in 1973, the General Assembly clarified the language of 7A-286(6) and consistent with an earlier Attorney General interpretation, provided: "In no case will a child be committed directly to a State hospital or mental retardation center." The statute (G.S. 7A-286(6)) expressed a preference for voluntary admission of the child with consent of a parent and in subsection (7) made explicit provision for voluntary admission with the consent of a court-appointed guardian even over the parent's objections, if treatment in a mental institution were determined to be in the best interest of the child.

There is no ambiguity in the statutory prohibition against direct commitment of a child by a juvenile judge. The plain meaning of that language is clear making an inquiry into legislative intent unnecessary. See *Peele v. Finch,* 284 N.C. 375, 200 S.E. 2d 635 (1973). If it is determined that treatment in a mental institution is in the best interest of the child, then voluntary admission may be arranged with the parents' consent. If the parents refuse consent, a guardian can be appointed and such guardian acting *in loco parentis* may voluntarily admit the child. See G.S. 7A-286(6) and (7). In respondent Brenda Mikels' case, the Durham County Department of Social Services had already been awarded custody, and it would have been a simple matter for them to consent to her voluntary admission to John Umstead Hospital. An involuntary commitment proceeding under Article 5A of Chapter 122 would have been necessary only if there were no one to act *in loco parentis* to admit her under G.S. 7A-286.

The legislature has made the considered judgment that a person should not be deprived of his liberty unless he is both mentally ill and dangerous to himself or others. See G.S. 122-58.1. An absurd result does not ineluctably follow, as appellant contends, since mentally ill juveniles can be admitted by consent of a parent or guardian. See G.S. 7A-286(6) and (7) and mentally ill criminal defendants can be committed under Article 11 of Chapter 122.

---

---

Conversely, to interpret the juvenile statute as appellant suggests would cause not only an illogical result but a potentially unconstitutional one. A basic rule of statutory construction is that a statute will be interpreted in such a way as to make it constitutionally valid if possible. See *North Carolina Milk Commission v. National Food Stores, Inc.,* 270 N.C. 323, 154 S.E. 2d 548 (1967). Chapter 122 was written to provide constitutionally defensible procedural and evidentiary rules. To allow juvenile judges to commit minors to mental institutions with a lesser standard than that set forth in Chapter 122 would subject such commitments to constitutional challenge as a deprivation of liberty without due process of law.

[2] This Court has recently held that juveniles are entitled to the same due process protections as adults in any proceeding where a loss of liberty is a possible result. See *In re Meyers,* 25 N.C. App. 555, 214 S.E. 2d 268 (1975).

The addition of G.S. 122-56.7 to Chapter 122 by the 1975 Session of the General Assembly indicates that the legislature shared the Court's concern for the protection of the rights of juveniles. This section requires that even in the case of a voluntary admission of a juvenile by parental consent, a hearing must be held within strict time limits, with counsel provided for indigents, and with all the procedural safeguards of an involuntary commitment under Chapter 122, Article 5A, to determine that the juvenile is mentally ill and in need of further treatment.

If we were to agree with respondent appellant's position, then the commitment of an individual under Chapter 7A would leave the mental institution in the precarious position of having to obey a court order in direct conflict with several statutes. For example, G.S. 122-56.7 requires a hearing in the district court in the county in which the treatment facility is located within ten days of admission of a minor and regular rehearings thereafter; G.S. 122-58.11 requires rehearings before a judge of the judicial district in which the facility is located at regular intervals; G.S. 122-58.11 (d) requires the district court of the district where the facility is located to unconditionally discharge any patient it determines to be not in need of continued hospitalization; and G.S. 122-58.13 requires the chief of medical services of the mental health facility to discharge a committed patient unconditionally at any time he determines that the patient is no longer in need of hospitalization.

The provision in 7A-286 (6) that a juvenile judge may not commit a child directly to a mental institution was clearly designed to prevent just such conflicts. Clearly, the Durham County Court exceeded its authority, and the order committing Brenda Mikels is void and unenforceable.

[3]  The next question facing this Court is whether the subsequent Granville County Court order is valid and enforceable. G.S. 122-58.11 requires the clerk of superior court of the county in which a State mental institution is located to calendar a rehearing at least 10 days before the end of the initial commitment period and before the end of any commitment periods ordered thereafter. This statute clearly proscribes the indeterminate commitment of any patient without periodic rehearings. The duty to hold rehearings for John Umstead Hospital is in the district court of the Ninth Judicial District, where the hospital is located. See G.S. 122-58.11 (b). The Granville County Court, therefore, clearly had jurisdiction of this matter.

It is equally apparent to this Court that the order entered by the Durham County Court is void. A judgment is void if the court rendering it does not have jurisdiction either of the asserted cause of action or of the parties. See *East Carolina Lumber Company v. West,* 247 N.C. 699, 102 S.E. 2d 248 (1958). A void judgment binds no one, and its invalidity may be asserted at any time and in any action where some benefit or right is asserted thereunder. See *East Carolina Lumber Company v. West, supra.* Moreover, a court may always treat a void order as a nullity. See *Veazey v. City of Durham,* 231 N.C. 357, 57 S.E. 2d 377 (1950).

In the instant case, the order was void as to respondent since a juvenile court judge is specifically forbidden to commit a juvenile to a mental institution by the language of G.S. 7A-286 (6), under which the judge purported to act. When the juvenile court in Durham County purported to commit respondent under the juvenile statutes, it was therefore without authority to do so and was without jurisdiction. The judge had no power to commit, and his order to commit was thus void.

Since the Granville County Court was mandated by statute to hold rehearings on all patients involuntarily committed and since the order of the Durham County Court was void, then the Granville County District Court properly had jurisdiction over the respondent Brenda Mikels, had statutory authority to deter-

mine whether her commitment should be extended, and acted properly in ordering· that she had been improperly committed and that she should be immediately released until committed in accordance with the statutory requirements.

The order appealed from is affirmed.

Chief Judge BROCK and Judge VAUGHN concur.