BRADLEY, Judge.
This is a contempt case.
On January 11, 1982 the Juvenile Court of Houston County determined that Laura Darlene Warrick was a child in need of supervision pursuant to section 12-15-l(4)(b) and (d), Code 1975. After a lengthy series of problem-filled and ultimately unsuccessful attempts at rehabilitating Laura, the juvenile court committed her to the Department of Mental Health (the department) for “evaluation, treatment and placement at the Eufaula Adolescent Adjustment Center, Eufaula, Alabama,” pursuant to section 12-15-90, Code 1975. After a dispositional review hearing held at the request of the Department of Pensions and Security, the juvenile court, on May 26, 1983, entered an order that Laura should remain in the department’s custody pending further orders of the juvenile court.
The department wrote a letter to the juvenile court on June 1, 1984, informing the court that on June 22, 1984 it would discharge Laura to her parents, which it did. Neither the court nor the guardian ad litem took any action. On June 26 the guardian ad litem filed a petition for contempt, alleging that various named employees of the department violated the court’s May 26, 1983 order in discharging Laura. The juvenile court subsequently held five members of the department in contempt. A petition for writ of certiorari was filed in this court.
At the outset, we note that in this contempt case review is by certiorari, since the people held in contempt are not in jail, Williams v. Stumpe, 439 So.2d 1297 (Ala.Civ.App.1983), and, thus, our scope of review is limited to questions of law and whether the record reflects any legal evidence in support of the decree. See, e.g., Simpson v. Harbin, 447 So.2d 189 (Ala.1984); Patterson v. Gartman, 439 So.2d 171 (Ala.Civ.App.1983).
I
We first examine whether the parties held in contempt were susceptible to a contempt citation. In its original order the court found that “Peggy Keys, T. Vernon Bishop and Bayard Tarpley are in contempt of this Court’s Order dated May 26, 1983.” The court subsequently amended its order and added Ken Wallis, the federal court appointed receiver of the department, and Anthony Dykes, director of the Eufaula Adjustment Center, which is operated by the department.
Keys, Bishop, and Tarpley contend that they could not be held in contempt for discharging Laura since they had no authority to discharge her, and in fact did not discharge her. We agree.
These three defendants served in various capacities with the department. Peggy Keys is a therapist at the Eufaula Adjustment Center (E.A.C.), and was Laura’s primary therapist; T. Vernon Bishop is the coordinator of treatment services at the E.A.C.; Dr. Bayard Tarpley is the clinical director of the E.A.C. It is undisputed that none of these defendants had the authority to authorize Laura’s release and that none of them attempted any such action. Their role was limited to diagnosing and treating Laura, and later to making reports and recommendations about Laura’s progress and future possible treatments. After evaluating Laura they recommended her release in line with their responsibilities at the department. But they were without authority to effect her release and played no role in the method whereby she eventually was released.
For a party to be held in contempt, the party must participate in the contemptuous act, conspire to commit the act, or procure the act by another. 17 C.J.S. Contempt § 33 (1963). See also Annot., 7 A.L.R. 4th 893 §§ 9, 10 (1981). None of *1226 these defendants have acted, conspired, or caused another to act in violation of the trial court’s order. Their sole contribution was to evaluate and treat Laura, and to make recommendations that she had profited as much as she could from their care. It was up to others to take their recommendations, plan a course of action, and carry them out.
We further note that while these defendants did not violate the court order they also could not comply with it. While they had no authority to release Laura, they also had no authority to order her held by the department. Inability to comply with a court order is a complete defense to a contempt citation. Newman v. Graddick, 740 F.2d 1513 (11th Cir.1984) (citing United States v. Rylander, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983); Reddish v. Reddish, 455 So.2d 891 (Ala.Civ.App.1984); Erwin v. Luna, 443 So.2d 1242 (Ala.Civ.App.1983).
Thus, Keys, Bishop, and Tarpley were not involved in any contemptuous behavior and thus were not properly subject to a contempt citation.
II
Wallis and Dykes are proper parties to the contempt citation. Wallis is the acting commissioner of the department of mental health, and as such, has been vested by the legislature with the general control and management of all of the department’s facilities, including the E.A.C. § 22-50-16, Code 1975. This includes supervisory power over all officers and employees of the department. Id. Wallis is also the receiver of the department, appointed to the position in the continuing federal litigation, Wyatt v. Stickney, 344 F.Supp. 373 (M.D.Ala.1972), affirmed in part and remanded sub nom Wyatt v. Aderholt, 503 F.2d 1305 (5th Cir.1974).
Dykes is director of the E.A.C., and has been delegated the responsibility and duty to discharge patients from the E.A.C. by Wallis. He is the party who made the determination and gave the order to discharge Laura from the E.A.C. Thus, Wallis and Dykes were properly held to be subject to a contempt citation.
Ill
The next issue is whether the department or the juvenile court is vested with the authority to determine when a committed minor is to be discharged when the juvenile court has ordered the minor held pending further court orders. In interpreting this statute, the underlying consideration is for this court to understand and effectuate the intent of the legislature as expressed in the statutes. See, e.g., Siegelman v. Folmar, 432 So.2d 1246 (Ala.1983).
The legislature placed the decision to involuntarily commit a juvenile, i.e. the entry decision, solely with the juvenile court. §§ 12-15-90, -30(b)(4), Code 1975. However, the statute is silent as to the exit decision, i.e. the decision to discharge the patient. On what authority then could the juvenile court make a decision that a minor previously committed to the care and custody of the department should be discharged?
In its April 5, 1982 order, the juvenile court committed Laura to the custody of the department under the authority of section 12-15-90, Code 1975. “Commit” is defined as the “[transfer [of] legal and physical custody.” § 12-15-1(5), Code 1975. “Legal custody” is defined as:
“A legal status created by court order which vests in a custodian the right to have physical custody of the child and to determine where and with whom he shall live within the state and the right and duty to protect, train and discipline him and to provide him with food, shelter, clothing, education and ordinary medical care, all subject to the powers, rights, duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by the juvenile court.”
*1227 § 12-15-1(17), Code 1975. Although these code sections permit the involuntary commitment of minors to the care and custody of the department, they are silent as to authority of the department to discharge a patient. The department of mental health is a creature of statute, and as such, must find its authority to act in the statute creating it. 73 C.J.S. Public Administrative Law & Procedure § 49 (1983). Since the statute creating the department did not specifically empower it to discharge a minor committed to its care, we must conclude that the department had no statutory authority to unilaterally discharge Laura from its custody.
In the absence of authority in the department to discharge, where does that authority lie? We believe the power to make that decision is in the juvenile court.
The applicable code sections relating to the commitment of minors to the department are also silent as to the authority of the juvenile court to discharge a patient from the custody of the department. However, the legislature has reposed statutory and equity powers in the juvenile court to permit it to assume continuing jurisdiction over minors when their welfare and best interests require it. § 12-15-32(a), Code 1975. And, in the commitment statute, the juvenile court is again specifically authorized by the legislature to “retain jurisdiction over such minor child ... for so long as the minor child is in the custody of the department of mental health.” § 13-15-90(k), Code 1975.
In the present case the juvenile court had assumed jurisdiction over Laura because it determined that she was a child in need of supervision and needed its help. Later the court was requested to commit Laura to the care and custody of the mental health department because of her abnormal behavior. The court did so and specifically ordered that her custody be in the department until further orders of the court. Once the juvenile court transfers custody to the department, custody remains in the department until it is relieved of that responsibility by the juvenile court or until the child reaches its majority.
In the case sub judice the juvenile court transferred Laura’s custody to the department and specifically said: “until further orders of the court.” Therefore, the department had legal custody of Laura and could not be relieved of this legal responsibility except by order of the juvenile court or the passage of time.
We are fully aware of the supervision the federal courts have assumed over the department in the case of adults in Wyatt v. Stickney, supra, holding that if a patient no longer requires hospitalization under the standards for commitment he must be released from involuntary commitment immediately. And the decision in this case should not be construed as a holding by this court that the rationale of Wyatt would not be applicable to minors in an appropriate case. In fact, we consider minors to be just as entitled to not be unnecessarily deprived of their liberty as adults. See Milonas v. Williams, 691 F.2d 931 (10th Cir.), cert. denied, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983); Matter of Mikels, 31 N.C.App. 470, 230 S.E.2d 155 (1976). As we view the present case, our task is not to enforce the directives of Wyatt but to determine who is the proper party to decide when the minor should be discharged from the custody of the mental health department.
In the present case the decision to discharge Laura was reposed in the juvenile court rather than the department. And the proper procedure for Laura’s discharge would have been for the department to advise the court that it had exhausted its treatment opportunities for the child and request that it be relieved of her custody and care. Upon receipt of such a petition, the court could set the matter for hearing and then make a decision as to the disposition of Laura’s custody.
The department did not request such a hearing before it undertook to discharge Laura on its own authority. In so doing, it violated the specific order of the *1228 court. Therefore, the juvenile court properly found Wallis and Dykes to be in contempt of its order. However, the court concluded that Wallis and Dykes could purge themselves of contempt by setting aside their discharge order and resuming legal custody of Laura. Once that is done, the department can petition the juvenile court for permission to be relieved of Laura’s custody. A hearing can then be held, at which all interested parties can be heard.
That aspect of the trial court’s judgment holding Keys, Bishop, and Tarpley in contempt of court is reversed, and that aspect of the court’s judgment holding Wallis and Dykes in contempt of court is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HOLMES, J., concurs.
WRIGHT, P.J., concurs specially.