Howard T. Hogan, P. J.
This action was brought to recover the sum of $969.90, predicated upon an aEeged conversion of an automobile upon which plaintiff claimed a security interest in the form of a financing statement.
The essential facts are not in dispute. On March 25, 1966 one Sheila Hardy of 162 Hempstead Boad, Spring VaEey, borrowed $800 from plaintiff for the stated purpose of purchasing a 1959 Cadillac automobEe bearing serial number 59 KO 91331. To obtain the loan she executed and delivered a promissory note for $969.90 payable to plaintiff and a security agreement (chattel mortgage) on the automobile, naming plaintiff as the secured party.
Three days later, on March 28, plaintiff filed a financing statement in the Bockland County Clerk’s office pursuant to section 9-302 (subd. [1], par. [d]) and section 9-403 (subd. [4]) of the Uniform Commercial Code. These sections require, respectively, that such statement must be filed by the secured party to perfect his security interest in a motor vehicle required to be licensed or registered in this State (§ 9-302, subd. [1], par. [d]), and that a financing statement shall be indexed according to the name of the debtor (§ 9-403, subd. [4]).
Thereafter, on April 23, 1966 one Shirley M. Book, the then owner of the automobile, also of 162 Hempstead Boad, Spring VaEey, and who, according to appeEant’s brief is SheEa Hardy’s mother-in-law, transferred the Cadillac to defendant. At the time of this transfer the automobEe was registered in the name of Shirley M. Book. Prior to such transfer plaintiff had not received any payment on the debt for which the OadElac was security. Upon learning of the transfer, plaintiff brought this action in conversion against the transferee.
Plaintiff’s motion for summary judgment is bottomed on the fact that a financing statement was filed on March 28, 1966, by virtue of which defendant had at least constructive notice of plaintiff’s security interest in the vehicle when defendant became the transferee from -Shirley Book on April 23, 1966. Defendant contends that the financing statement is of no effect as constructive notice due to its failure to meet the statutory requirements of a financing statement. The court below, in denying plaintiff’s motion, held that the filed statement was ineffectual as to a buyer without actual notice of the security interest *808 because of plaintiff’s failure to indicate on the financing statement that it was being filed in accordance with the security-agreement signed by the debtor (Sheila Hardy) authorizing such filing without her signature thereon.
Since the determination of this controversy necessarily hinges on the validity or invalidity of the financing statement, a careful perusal of its contents is required.
Examination of a copy of the filed financing statement discloses a minor misspelling of the name ‘ ‘ Sheila ’ ’. Further, and of far more significance with respect to this litigation, is the absence of any information under item number 10. This item sets forth the reason why the debtor’s signature does not appear on the statement itself and is required to be completed by marking an “ x ” in the appropriate box. The central issue presented for our determination therefore is — What effect is to be given the failure of a secured party to provide this information?
Although a financing statement is usually signed by both the debtor and the secured party (§ 9-402, subd. [1]), such statement is sufficient when signed only by the secured party, provided that it otherwise complies with that subsection and is filed to perfect a security interest in any one of three classes of property (§ 9-402, subd. [2]). One such class is collateral under a security agreement signed by the debtor and authorizing the secured party to file a financing statement (§ 9 — 402, subd. [2], par. [c]). However, the latter subsection specifically requires that “ Such a financing statement must state that it is filed in accordance with a security agreement signed by the debtor and authorizing the filing of the statement ”. (Emphasis supplied; see Bank of North America v. Bank of Nutley, 94 N. J. Super. 220.) It is important that we keep this clear statutory mandate in mind if the events in this case are to be viewed in proper perspective.
Since the code itself furnishes no criteria by which the gravity of an omission such as the one at bar may be determined, it is necessary to refer to collateral sources, such as the Official Comments, in order to ascertain the extent to which the legislators may have considered the missing information indispensable.
Superficially, it may perhaps be argued that marking an “ x ” in a box is a mere mechanical act which, if not performed, is inconsequential. But upon all the facts herein, such a conclusion seems to be unwarranted. Perforce the statute (§ 9-402, subd. [2], par. [c]), the “x” in effect represents the debtor’s signature. Surely, the significance to be accorded a signature is not to be reduced when, for reasons of facility, it is repre *809 seated by an u x ”. Only by equating this mark with the debtor’s signature may we properly gauge the intention of the legislators.
The Official Comment to section 9^402 (McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code) states that the reason for dispensing with the debtor’s signature is to prevent the secured party from being penalized by the debtor’s actions when a timely filing is required: This might occur when the debtor has moved or disposed of the collateral fraudulently or without authorization and is reluctant or hostile with respect to signing a financing statement. This dispensation does not, however, allow the secured party to improve his position where he has failed to indicate on the financing statement the reason for the filing without the signature. The Comment further emphasizes the importance of providing the required information by paraphrasing the statutory mandate: ‘ ‘ Financing statements filed under this subsection must explain the circumstances under which they are filed ”. (McKinney’s, supra.)
It is therefore quite apparent that the code contemplates a dispensation of the normal bilateral signature requirement for the sole purpose of facility, and that the reason for the dispensation must be shown on the financing statement in item number 10.
A further source of information with respect to this statute is “ A Guide to Filings under the Uniform Commercial Code ” published and distributed by the Secretary of State (McKinney’s, supra, p. 661), which reads as follows:
u T. Financing Statement-Form-UCC-l
* # #
1. Entries * * *
The following items are to be completed on the official Financing Statement, Form UCC-1:
& * *
10. 'Signatures.— Signatures of Debtors and original Secured Party (or the Assignee) are affixed, except in certain instances as noted above, the signature of the Debtor may not be required. In such cases, the proper box is checked in Item 10.”
The foregoing specific instruction by the Secretary of State should serve to remove any doubt as to the necessity for compliance with this requirement where a debtor’s signature does not appear on the financing statement.
It is significant to note that New York is the only code State that permits a unilateral filing to perfect a security interest on collateral under a security agreement that is signed by the debtor and authorizes the secured party to file the financing *810 statement (§ 9-402, subd. [2], par. [c]). The Permanent Editorial Board for the Amendment of the Uniform Commercial Code has rejected this subsection under the general heading that there is great value in requiring that the documents filed with the filing officer show the signature of the debtor. Specifically, the board feels that the signature of the debtor substantially decreases the possibility of: “ (a) fraudulent filing — where a ‘ secured party ’ deliberately files without authorization in order to interfere with some other transaction or create a false impression — (b) erroneous filing — where the secured party describes the collateral improperly through carelessness or misunderstanding — and (c) greedy filing — where the secured party, pursuant to a broad authorization in the security agreement, describes the collateral in much broader terms than are necessary or desirable.” (McKinney’s Special Pamphlet, [1962], N. Y. Uniform Commercial Code, p. 825.)
Thus it must be obvious that the dominant theme of the board’s report is one of concern for the protection of the debtor. Similar motivation is reflected in the N. Y. Comments and Annotations to the Code (Uniform Laws Comment, Consolidated Laws Service Cumulative Supplement 1967). Solicitude for the debtor’s protection where his signature did not appear on the financing statement has been expressed in other jurisdictions as well. In the case of Matter of Comer’s Town & Country Super Market (U. S. D. C. Ohio, 2 U. C. C. Reporting Service 541) the court held that a financing statement which failed to contain the signature of the debtor, was not effective against a trustee in bankruptcy. In another Federal District Court the signature requirement was deemed as ‘ ‘ indispensable a concession of authenticity as addresses ” (Matter of Corlstrom, U. S. D. C. Maine 3 U. C. C. Reporting Service 766).
I am not unmindful of those sections of the code which require the courts to adopt a liberal attitude and overlook ‘ ‘ minor errors which are not misleading ” (§§ 1-102, 9-402, subd. [5]). However, for the reasons previously stated, the omission of the debtor’s “ signature ” is not to be treated as a minor error. The code may not be so broadly construed as to excuse the failure of the statement to contain the signature of the debtor. Such a liberal interpretation would defeat the uniformity the code seeks to create and would negate the fundamental protective features intended to inure to the benefit of those dealing in the open market in commercial activities (Matter of Corner’s Town & Country Super Market, supra).
Analogically, the failure to provide for a substitution of debtor’s signature relegates the filed paper here involved to *811 the status of one that requires a bilateral signature (§ 9-402, subd. [1]). Thus viewed, the defect in the case at bar is fatal and results in an unperfected security interest. (See McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, N. Y. Annotations, p. 568.) It has been held that the filing of a defectively executed agreement that fails to contain the information (signature) required is no more effective than if there were no filing at all from the standpoint of constructive notice to third persons (Matter of Couser’s Town & Country Super Market, supra).
Accordingly, it is my view that the financing statement was fatally defective and was therefore ineffectual to perfect plaintiff’s security interest in the Cadillac and did not constitute constructive notice to defendant. In light of this conclusion, it is unnecessary to reach the question as to the effect to be given the misspelling of the debtor’s first name or the omission of the serial number of the Cadillac. It is to be observed, however, that there is no statutory provision that requires a serial number of a motor vehicle on the financing statement and further, that the misspelling of the debtor’s first name as “ Shelia ” instead of Sheila, is obviously one of the minor errors contemplated by subdivision (5) of section 9-402.
The predicament in which the plaintiff now finds itself is not the result of a mere concatenation of adventitious circumstances, but the product of what appears to be a serious deficiency in our statute law. While the conclusion indicated in this case is based on plaintiff’s failure to perfect its security interest in compliance with the requirements of the code, there is a more serious problem which merits consideration — even in a case where the filed statement is in proper form.
One of the fundamental objectives of the statute under discussion is to put third parties on notice that a creditor has a possible security interest with respect to property in possession of a debtor (McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, § 9-302, Comments 1, 5). The facts in this case make it abundantly clear that even if plaintiff had properly filed its financing statement, such filing would not have served to put defendant on notice of the security interest in the Cadillac, regardless of how diligently defendant may have searched the record.
Thus, defendant was the transferee of the car from Shirley Book, who presented herself at defendant’s car lot with the registration in her name. ¡She was the transferee of the car from the named debtor, Sheila Hardy, but defendant was not privy to or put on notice as to this private transfer. Since *812 the financing statement was filed under the last name of Sheila Hardy, a search of the public records under the name of Shirley Rook would not have brought to light plaintiff’s security interest, and defendant would therefore unwittingly be ensnared into making a purchase subject to such security interest.
. Without a doubt, the problem of providing notice of a security interest in motor vehicles must have given the draftsmen of the code an inordinate share of difficulty. The final result reflects á deference to the local laws so that any one of three methods of filing could be used, depending on the local Motor Vehicle Law of the individual State (U.C.C. Law Letter, vol. 1, No. 7). New York has chosen to use the regular filing offices of the County Clerks (§ 9-401) and to provide for filing of the financing statement according to the debtor’s last name (§ 9-403, subd. [4]). This method of filing appears to be wholly unsatisfactory and is directly responsible for situations like the one at bar.
In my opinion, the problem could be solved by either of two alternative procedures. One method involves adopting the Certificate of Title concept in New York State. Thereunder, the vehicle’s registration would be stamped with a notice of the security interest in the vehicle. This notice would ‘ ‘ follow ’ ’ the vehicle regardless of how often it changed ownership.
An alternative method would be to require (a) that the financing statement adequately identify the vehicle, setting forth its serial number, make and model and (b) that the filing officer file the statement not only by the name of the debtor but also by the serial number of the vehicle. This would be similar to section 9-403 which, in respect to real estate, provides for filing according to the block in which the real property is situated as well as by the name of the debtor.
Either or both of these methods, if adopted, would greatly reduce the opportunity for deception in transactions involving security interests in motor vehicles. I earnestly believe that they would go a long way toward curbing abuses now possible and prevalent under existing law and would serve to allay the uncertainties of those who under the present system must run the risk that an automobile acquired by purchase may be incumbered by an undetectable lien.
Inasmuch as the financing statement upon which plaintiff bases its claim for conversion is ineffectual as to the defendant, who is not claimed to have had actual notice thereof, defendant is entitled to summary judgment dismissing the complaint notwithstanding its failure to cross move for such relief (CPLR 3212, subd. [b]).
*813 The order should be modified by granting summary judgment in favor of defendant dismissing the complaint, without costs.
Concur — Gliokman and Pittoni, JJ.
Order unanimously modified by granting summary judgment in favor of defendant dismissing the complaint, and, as so modified, affirmed, without costs.