In re Edison J. THOMAS, Debtor.

J. Glenwood STRICKLER, Trustee in Bankruptcy, Plaintiff,

v.

Edison J. THOMAS, Salem Tire Company, National Tire Wholesale, Inc., Thomas Save Station, Inc., Vinton Tire, Inc., North River Insurance Company, Defendants.

Bankruptcy No. 7–80–00271.
Adv. No. 7–80–0064.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

Nov. 25, 1980.

F. Jack Ward, Roanoke, Va., for debtor.

J. Glenwood Strickler, Roanoke, Va., trustee.

John G. Rocovich, Registered Agent, for Salem Tire Co.

Julian H. Raney, Jr., Roanoke, Va., for National Tire Wholesale, Inc.

Leon R. Kytchen, Roanoke, Va., for Thomas Save Station, Inc.

Michael S. Ferguson, Roanoke, Va., for Vinton Tire, Inc.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

### STATEMENT OF THE CASE

The "Debtor" herein, Edison J. Thomas, filed a petition for relief under Chapter 7 of the Bankruptcy Reform Act of 1978 on March 14, 1980. A trustee was duly appointed to administer the assets of the Debtor and on April 22, 1980 the trustee filed a complaint to sell, *inter alia*, certain inventory, equipment, accounts receivable and contract rights belonging to the Debtor. In addition the Complaint sought a determination of the rights of other parties, Salem Tire Co., National Tire Wholesale, Inc., Thomas Save Station, Inc., Vinton Tire, Inc., and North River Insurance Company with respect to the inventory *etc.*, it having been alleged that one or more of these corporations had prior perfected security interests or liens on the goods in question.

Answers having been timely filed, it appeared to the court that a controversy existed as to certain ownership of property in possession of the trustee and other parties. Counsel for the parties were given an opportunity to file amended pleadings in timely fashion.

In the Trustee's complaint, it was alleged that Salem Tire Co. could have an interest in certain of the above assets; it was further alleged that National Tire Wholesale, Incorporated had levied on certain of the above assets within 90 days prior to the bankruptcy petition; it was further alleged that Thomas Save Station, Inc. may have an interest as purchaser of certain of the above assets; it was finally alleged that Vinton Tire, Inc. may have a perfected security interest in certain of the assets by virtue of an alleged financing statement.

In its amended answer to the Trustee's complaint, National Tire Wholesale, Incorporated denied that the levy was a voidable preference under 11 U.S.C. § 547. Thomas Save Station, Inc. answered that it was the owner of certain of the property seized by the levying creditor, National Tire Wholesale, Incorporated and that any sale by the trustee should exclude its property, certain motor oil, gear lube, transmission fluid, and grease. Vinton Tire, Inc. answered and said that it had a security interest by virtue of a security agreement filed as a financing statement in the local clerk's office and with the State Corporation Commission in Richmond.

This Court on June 2, 1980 ordered the Trustee to sell all of the assets in the place of business known as Salem Tire Co. free of liens with the validity, priority and amounts of all liens as hereafter determined by this Court to be impressed upon the proceeds. The gross amount realized from the sale of these assets was $3,482.00, which is being held subject to order of this Court.

## STATEMENT OF FACTS

E. J. Thomas, "Debtor", is the brother of O. C. Thomas who also filed a petition seeking discharge in this Court and who originally owned Salem Tire Co. in which E. J. Thomas acted as president. However, in June, 1976, Salem Tire Co. had its corporate charter revoked by the State Corporation Commission of Virginia because of its failure to submit annual reports and pay franchise taxes. Thereafter, the Debtor continued to operate the business and as he testified did not know that the corporate charter was revoked after June, 1976. He continued to sign corporate checks as "E. J. Thomas, President."

E. J. Thomas trading as Salem Tire Co. was in the wholesale business of selling automobile tires, batteries, motor oil and other accessories many times to other corporations owned by the Thomas family. Some gasoline was also sold through Salem Tire Co. which was located at 214 Boulevard St., Salem, Virginia.

In 1972, debtor took over the business from his brother, O. C. Thomas without any payment to O. C. Thomas for the business or purchasing any stock. After the corporate charter was revoked in 1976 Debtor without knowledge of the revocation continued to hold himself out as doing business under the corporate name of Salem Tire Co. Suppliers and other trade associates billed to "Salem Tire Co." E. J. Thomas signed checks in a corporate officer's capacity.

National Tire Wholesale, Inc. was a trade creditor of Debtor supplying automobile tires on open account. Upon date of petition herein Debtor owed National Tire Wholesale, Inc. approximately $42,000.00. To protect its interests, National Tire Wholesale, Inc. obtained or had issued out of State Court, a prejudgment attachment styled *National Tire Wholesale, Inc. v. E. J. Thomas t/a Salem Tire Co., Inc.* on January 31, 1980. The Trustee herein alleges that the prejudgment attachment was a voidable preference pursuant to 11 U.S.C. § 547. Testimony indicated that there were two different levies, one on automobile and truck tires and again on motor oil, grease, transmission fluid, and lube. The latter levy was made on February 24, 1980.

It appeared from the evidence that Salem Tire Co., Thomas Save Station, Inc., and Vinton Tire, Inc. were all family owned by different members of the Thomas family. The names were used interchangeably. For example, the Corporate Charter shows "Salem Tire Co." while the security agreement in question designates "Salem Tire Company, Inc." The security agreement likewise designates the name "Vinton Tire, Incorporated", while this defendant's answer is filed as "Vinton Tire, Inc." These entities shared warehouse space at 2520 Centre Avenue in the City of Roanoke, the warehouse being compartmentalized three ways. The Debtor additionally operated a wholesale–retail business in the City of Salem at 214 Boulevard Street. (The evidence was insufficient to show whether or not Debtor had one or more than one place of business as contemplated by the Uniform Commercial Code of Virginia and the opinion hereafter makes such finding unnecessary.) Thomas

Save Station, Inc. claimed that some of the items levied upon and later sold by National Tire Wholesale, Inc., were owned by Thomas Save Station, Inc. Testimony revealed that a portion of the partitioned warehouse was rented to Thomas Save Station, Inc. at a rental of $150.00 per month. When the Roanoke City Sheriff attached on behalf of National Tire Wholesale, Inc., the goods were comingled and there was no physical evidence of separate ownership other than actual presence of the property in the jointly–owned warehouse.

Vinton Tire, Inc. claims a prior perfected security interest in the tires and other inventory of Salem Tire Co. by virtue of a document entitled "Financing Statement" filed with the local clerk's office and with the State Corporation Commission. The evidence revealed that E. J. Thomas was aware of the purported financing statement and thought it gave Vinton Tire, Inc. a lien on $130,000.00 or $140,000.00 worth of inventory owned by Salem Tire Co., mostly automobile tires.

The "Financing Statement" reads in pertinent part: "This Financing Statement," dated this 5th day of October, 1979 by and between Salem Tire Company, Inc., (the corporate name chartered by the State Corporation Commission was "Salem Tire Co.") Party of the first part, and Wilbur Cundiff, President of Vinton Tire, Incorporated, 24 Walnut Avenue, Vinton, Virginia 24179, Party of the second part." Vinton Tire, Inc. was the primary supplier of tires to Salem Tire Co. Shipments of tires were taken to the Centre Avenue warehouse where a warehouseman would check and inventory them and later make deliveries as needed to Salem Tire Co. at 214 Boulevard St., Salem, Virginia. The warehouseman, Calvin Handy, was employed by the warehouse itself. When National Tire Wholesale, Inc. or other suppliers would deliver tires to the warehouse, Calvin Handy would pay them by check at the time of delivery. Salem Tire in time would reimburse Handy and pay him a commission based on a per tire rate. When Vinton Tire sold tires to E. J. Thomas trading as Salem Tire Co., E. J. Thomas would pick them up and take them directly to the Salem Tire Co. place of business at 214 Boulevard in Salem, Virginia. As to the motor oil, transmission fluid, gear lube, and grease, Handy bought these supplies for Salem Tire Co. which were delivered to the Centre Avenue warehouse. From there, it was delivered as needed to the location in Salem.

The warehouseman, Handy indicated that there was no lease agreement between the parties as to the warehouse. Testimony indicated that the warehouse was owned by O. C. Thomas. Handy had been asked to come into the business as a warehouseman in 1972. He didn't buy into the business or pay any money to either O. C. Thomas, E. J. Thomas, Vinton Tire, Inc., Thomas Save Station, Inc., or Salem Tire Co. His income was derived from receiving, warehousing, and shipping gasoline, tires and other automobile accessories for the benefit of the different Thomas–owned or affiliated companies. Rental was paid at the rate of $.01 per gallon of gasoline delivered.

## CONCLUSIONS OF LAW

The first issue is whether the levy by National Tire Wholesale, Inc. on January 31, 1980 was a voidable transfer pursuant to 11 U.S.C. § 547(b).

The second issue is whether the security agreement created in favor of Vinton Tire, Inc. was sufficiently perfected to defeat the claim of the Trustee in bankruptcy as a lien creditor under 11 U.S.C. § 544(a)(1).

The final issue involves a determination of the rights of Thomas Save Station, Inc. as a purchaser/owner of certain of the levied–upon assets.

██ As to the first issue of a voidable preference, it is long–settled in commercial law that a debtor may voluntarily prefer one creditor over another unless such action has been interdicted by statute. At common law, this "favoritism" was legitimate so long as the object of the transfer was to pay or secure payment of an antecedent debt. In the case *sub judice*, Congress provided that if certain preferences of creditors were made within a set time prior to

the bankruptcy petition, the preference would fail or be avoided.

■ Even under 11 U.S.C. § 547(b), the trustee may defeat the rights of a judicial lien creditor. The subsection provides:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor–

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer–

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if–

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

The burden of proving the existence of these essential elements is upon the trustee seeking to avoid the transfer. According to the statute just cited, if a "transfer" occurred within 90 days prior to the filing of the petition and the debtor was insolvent, the transfer could be avoided. Transfer would, of course, include a judicial lien according to 11 U.S.C. § 101(40) which reads: " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with property or with an interest in property,

including retention of title as a security interest." The complementary legislative history indicates that a "transfer is a disposition of an interest in property." The Code definition of "transfer" is as broad as possible, inclusive of such involuntary transfer as a levy, a garnishment, or a judicial lien.

■ Insolvency as defined by 11 U.S.C. § 101 is an essential element of a preference under 11 U.S.C. § 547. It no longer is necessary to put the creditor on notice of insolvency at the time of transfer as was true under prior law. Here the Debtor was hopelessly insolvent at the time the petition was filed on March 14, 1980. There was no showing that Debtor's financial circumstance materially changed from the date of the levy to date of the petition. Therefore such showing is sufficient to prove insolvency. *See McClung v. Friedman* (4th Cir. 1952) 195 F.2d 516; *Geisler v. Valley Lumber Corporation* (4th Cir. 1974) 3 CBC 97, 3 CBC 209, 518 F.2d 1174 and 4 Rem. § 1643.-4.[1]

Unlike the *Bankruptcy Act* of 1898 after the Chandler amendment of 1938, there is no *per se* avoidability of a judicial lien, other than in the context of a voidable preference under 11 U.S.C. § 547(b). The former Bankruptcy Act provided for the avoidance of judicial and other liens:

"Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void . . . .

11 U.S.C. § 107 [§ 67(a)(1)]

With the enactment of the new Code, the drafters eliminated the confusion inherent in prior law. It had appeared that the provisions of former § 60 relating to a pre-1938 judgment unnecessarily overlapped the provisions of former § 67, dealing with the same general subject. Section 547(b) of the Code however, unlike the Act,

---

1. The rule in *McClung* and *Geisler* is now codified in 11 U.S.C. § 547(f) which states as follows:

"For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

refers simply to transfers of the debtor's property, and, § 67(a) of the former Act has been eliminated in the Code as a separate provision. *See* 4 *Collier* ¶ 547.12[1] (15th ed. 1979). According to Collier:

> This eliminates difficulties that arise from the fact that the mere entry of a judgment may or may not create a lien, and thus could hardly give a creditor a preferred standing where something additional was necessary before a lien resulted.... It is now clear that not only any form of a judgment, but any judicial proceeding that fixes a lien upon the property of the debtor and that comes within the other requisites of section 547(b) will constitute a preference.

4 *Collier* ¶ 547.12[1] (15th ed. 1979).

In the opinion of this Court, the trustee has met his burden and we conclude that the prejudgment attachment by National Tire Wholesale, Inc. was a voidable preference within the meaning of 11 U.S.C. § 547(b).

The next issue involves a determination of Vinton Tire, Inc.'s security interest.[2] As the document indicates, Salem Tire Co. (upon the document as Salem Tire Company, Inc.) entered into a security agreement—not with Vinton Tire, Inc. but with Wilbur Cundiff, President of Vinton Tire, Inc. Had the parties used the UCC form financing statement, Salem Tire Co. would have been listed as the "Grantor" and Wilbur Cundiff as " Grantee". There was no testimony as to what interest Wilbur Cundiff had other than president of the corporation. The document is quite misleading: any creditor searching the records of the local clerk's office or the SCC would hardly be

2.      FINANCING STATEMENT

"This Financing Statement, dated this 5th day of October, 1979 by and between Salem Tire Company, Inc., Party of the first part, and Wilbur Cundiff, President of Vinton Tire Incorporated, 24 Walnut Avenue, Vinton, Virginia 24179, Party of the second part.

To secure any indebtedness or liability of the Party of the first part to the Party of the second part, the Party of the first part hereby grants to the Party of the second part, a security interest in the amount of $150,000.00 in the following merchandise:

All inventory (including, but not limited to tires, tubes, supplies and accessories) and equipment acquired by the Party of the first part from the Party of the second part, now or in the future; all accounts receivable and contract rights, including chattel paper, arising therefrom all increases, substitutions, replacements, additions and accessions, and all proceeds. Party of the first part warrants, covenants and agrees as follows:

a.  To make full and faithful payments to the Party of the second part for all obligations incurred by the Party of the first part in obtaining merchandise from the Party of the second part in accordance with the credit billing terms in effect at the time merchandise is ordered.

b.  To reimburse the Party of the second part for all costs of collection, including reasonable attorney's fees should same be required to facilitate collection, and to pay an interest rate of 1% per month on any past due balance owed to the Party of the second part.

c.  To execute Uniform Commercial Code Filing Statements (UCC Statements) and other documents as the Party of the second part may require in order to perfect the security interest of the Party of the second part in the merchandise.

d.  To insure and otherwise guard the merchandise against fire, theft, and other destruction and perils.

e.  To notify the Party of the second part of any change in corporate status including reorganization, legal action pending, judgments rendered against the Party of the first part, declaration of bankruptcy or any other condition which might effect the Party of the first part's ability to make full and faithful payments to the Party of the second part when due. Further, the Party of the second part has the right to accelerate the payment schedule and declare all amounts owed it, due and payable should any of the conditions listed in this paragraph arise.

f.  The merchandise financed by this Agreement shall be stored in a warehouse located at 2520 Center Avenue, Roanoke, Virginia, and released to the Party of the first part as needed at 214 Boulevard, Salem, Virginia, and the Party of the second part hereto does hereby specifically retain a lien on all merchandise, whether located at 214 Boulevard, Salem, Virginia, or in the warehouse at 2520 Center Avenue, Roanoke, Virginia."

| ATTEST: | SALEM TIRE COMPANY, INC. |
| --- | --- |
| /s/ Dovie Thomas | BY: /s/ Edison J. Thomas, Pres. |
| Secretary | Edison J. Thomas, President |
| ATTEST: | |
| | VINTON TIRE, INCORPORATED |
| Secretary | BY: /s/ Wilbur Cundiff, Pres. |
| | Wilbur Cundiff, President |

put on notice that E. J. Thomas was holding himself out as the owner of "Salem Tire Company, Inc." and that his goods were encumbered by a financing statement. Invoices admitted into evidence shows "Salem Tire Co., Inc. Wholesale Warehouse, P. O. Box 12604, Roanoke, Va. 24027" invoicing to "Thomas Save Station" and Thomas Save Station invoices to "Salem Tire Co., Inc. 214 Boulevard Street, Salem, Virginia 24153" and not Roanoke, Virginia.

The Uniform Commercial Code, Virginia Code Ann. § 8.9–402 (1980 Cum.Supp.) titled "Formal Requisites of financing statements states that "(1) a financing statement is sufficient if it gives the names of the debtor and the secured party . . ." The financing statement here apparently gives the incorrect name of both parties. The agreement provides that the "merchandise" would be stored at the warehouse in the City of Roanoke at 2520 Centre Avenue and released to the Debtor at 214 Boulevard, Salem. There was no clear and specific address listed for the Debtor Salem Tire Co. The security agreement indicates the Debtor's place of business may be in Salem while the financing statement is filed in Roanoke. Further, the effective date of the "financing statement," October 5, 1979, was some two years and four months after the corporate entity had been dissolved by action of the State Corporation Commission.

While the filing requirements are liberally construed and the courts will look ultimately to the notice responsibility of the instrument (*see In re Mann*, 318 F.Supp. 32 (W.D.Va.1970)), it certainly is not without limitation. Notice of record was neither the debtor Edison J. Thomas or the disenfranchised corporation "Salem Tire Co." but that of an entity referred to as "Salem Tire Company, Inc." It should be further noted that claimant, Vinton Tire, Inc. in their own instrument erroneously designated itself but also the name "Salem Tire Company, Inc." It was Vinton Tire, Inc. who assisted in creating the misnomer and does not stand in a position of an innocent party herein. It is indeed somewhat less innocent in this case because Vinton Tire, Inc. and Salem Tire Co., were family related and

their transactions are to be viewed differently than may be the case of innocent third parties who would not have knowledge of possible erroneous names upon U.C.C. security documents.

In a recent Georgia decision, Bankruptcy Judge Drake held that a financing statement indexed under a corporate name was insufficient to protect a creditor's security interest in property owned by the corporation's president, the Debtor, even though debtor had misrepresented that corporation was the owner of the property and even though the Debtor signed the security agreement as president of the corporation. *In re Eady*, 4 B.R. 1 (N.D.Ga.1979). There the rationale was the same as here; "persons searching the records would not be put on notice by such a filing." *See also In Re Janmar*, 4 B.R. 4 (Bkrtcy.N.D.Ga.1979).

Courts and commentators alike urge the adoption of a "seriously misleading" standard on the question of notice. *In re Platt*, 257 F.Supp. 478, 482, 3 U.C.C.Rep. Serv. 719, 723 (E.D.Pa.1966); J. White and R. Summers, *Handbook of the Law under the Uniform Commercial Code* 839 (1972). Under this theory, a court should, in reviewing an allegedly irregular attempt at U.C.C. filing, look closely at whether or not a "reasonably diligent searcher" would be misled by the irregularity. *In re Bosson*, 432 F.Supp. 1013 (D.Conn.1977). The Second Circuit has expressly adopted this approach. *In re Excel Stores, Inc.*, 341 F.2d 961 (2d Cir. 1965): *In re Hollis*, 301 F.Supp. 1 (D.Conn.1969) (interpreting Conn. law).

The classification of cases construing the "proper name" problem includes those in which the debtor's correct name nowhere appears on the financing statement, either because the parties are careless in setting out the correct business name (*e. g.* Excel Department Stores instead of Excel Stores, Inc.) or because the parties used an unregistered, fictitious name. There was no evidence that Edison J. Thomas ever filed a certificate of doing business under a ficti-

tious name under Va.Code Sec. 59.1–69.[3] (e. g. Platt Fur Co. for Henry Platt or as in this case, Salem Tire Co., Inc. for E. J. Thomas.) This is not a case of mistaken or incorrect indexing which the courts have been willing to tolerate, but this is actually a case of filing under not only an erroneous but a non–existent name, having the same effect as if it were fictitious.

In the *Platt* decision, *supra*, "Platt Fur Co." was an unregistered fictitious name for the business of Henry Platt. Henry Platt also used the fictitious trade name of "Kenwell Fur Novelty Co." The Pennsylvania court stated:

"The use of Kenwell as the debtor would clearly have left [the secured party] without a perfected security interest. However, the name Platt Fur Co. is sufficiently related to the name of the debtor, Henry Platt, to require those who search the records to make further investigation ... [T]he name was "not seriously misleading," the criterion for effectiveness under section 9–402(5)."

*In re Platt*, 257 F.Supp. 478, 482 (E.D.Pa. 1966); *Accord Beneficial Finance Co. v. Kurland Cadillac–Oldsmobile, Inc.*, 57 Misc.2d 806, 293 N.Y.S.2d 647 (App.Term. 1968). There is, however, no question that "Salem Tire Company, Inc." was misleading, especially when the debtor in fact was Edison J. Thomas, the Debtor herein. Any reasonable searcher of the records would have been "seriously mislead." *See also In re Brown*, 88 F.Supp. 297 (N.D.Ohio 1950); *Little v. County of Orange*, 31 N.C.App. 475, 229 S.E.2d 823.

The trustee pursuant to 11 U.S.C. § 544 stands in the position given by its provision to–wit:

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchase of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Vinton Tire, Incorporated should not be permitted, by its own document, to insert an erroneous name of a grantor and then assert the validity of that document against an innocent third party as a defense to recovery by that third party who happens to be in this case, the trustee with all the foregoing rights and powers.

---

3. *Code of Virginia 59.1–69. Certificate required of person or corporation transacting business under assumed name.–*

"No person or corporation shall conduct or transact business in this State under any assumed or fictitious name unless such person or corporation shall sign and acknowledge a certificate setting forth the name under which such business is to be conducted or transacted, and the names of each and every person or corporation owning the same, with their respective post office and residence addresses (and, when the corporation is a foreign corporation, the date of the certificate of authority to

do business in this State issued to it by the State Corporation Commission), and file the same in the office of the clerk of the court in which deeds are recorded in the county or corporation wherein the business is to be conducted."

"The purpose of this section is to prevent fraud and to compel an individual or a corporation to disclose the name of the real owner of the business, in order that the person or corporation may sue in or be sued by the proper name. *Bryant Elec. Co. v. Joe Rainero Tile Co.*, 84 F.R.D. 120 (W.D.Va.1979)."

The relationship between Vinton Tire, Inc. and Salem Tire Co. may well be that of an "insider" of Debtor. Thus, it seems inappropriate not to charge it with notice or knowledge of facts surrounding the transactions of the debtor, E. J. Thomas who traded for more than two years as Salem Tire Co.

■ The Code states as to an insider at 11 U.S.C. § 101(25) the following:

... insider includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control;

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor;

Under either (A) or (B) above, Vinton Tire, Incorporated in spirit, if not in fact, could be considered an insider with knowledge and cannot now be heard to complain of its failed security interest.

Finally, there is the question of Thomas Save Station, Inc. and its claim to certain of the motor oil, lube, grease, *etc.* levied upon by National Tire Wholesale, Inc. The parties have stipulated that Thomas Save was the bona fide owner of the following items levied upon by National Tire Wholesale, Inc.:

| Item | Estimated Value |
|---|---|
| 172 cases Quaker State 10 W-40 | $ 3,173.40 |
| 114 cases Penntrex SAe 30 | 2,023.50 |
| 31 cases Penntrex transmission fluid | 441.75 |
| 81 cases Quaker Maid F & D II | 1,405.35 |
| 15 cases W P grease | 225.00 |
| 4 cases Quaker Maid gear lube | 60.00 |
| 4 cases W P lube | 65.76 |

The other items not owned by Thomas Save Station, Inc. but which were levied upon by National Tire Wholesale, Inc. now are assets of the trustee. The other items as listed on Plaintiff's Exhibit 1A are referenced by the following list of inventory, to--wit:

| Item | Estimated Value |
|---|---|
| 102 cases Havoline 10 W-40 | $ 2,106.30 |
| 164 cases Pennzoil 10 W-40 | 3,411.20 |
| 54 cases Pennzoil 10 W-30 | 1,071.90 |
| 12 cases Pennzoil 20 W-20 | 225.00 |
| 14 cases Kendall SAe 30 | 256.20 |
| 130 cases Kendall 10 W-40 | 2,639.00 |
| 110 cases Deluxe Quaker State 10 W-40 | 2,321.00 |
| 19 cases Wolfhead SAe 30 | 318.25 |
| 20 cases Wolfhead Transmission Fluid | 367.00 |
| 38 cases Quaker State 10W-20W-30 HD | 767.60 |
| 15 cases Quaker State SAe 30 | 285.75 |
| 25 cases Gastrol GTX 10 W-40 | 500.00 |
| 20 cases Wolfhead 10 W-40 | 376.00 |

The remaining property abovementioned is an asset of the trustee and the lien of the other creditor, National Tire Wholesale, Inc., having been avoided, National Tire Wholesale, Inc. shall account to the trustee.

It is

## ADJUDGED AND ORDERED

that the trustee administer the said assets and retain the funds from sale as property of this estate and liens avoided in accordance with the within opinion.

North River Insurance Company being a nominal party herein since it posted attachment bond in behalf of National Tire Wholesale, Inc. is dismissed from these proceedings, but not from such liability as it may have incurred.