In re Robert P. EGGLESTON, Debtor.

Robert P. EGGLESTON, Plaintiff,

v.

THIRD NATIONAL BANK IN NASHVILLE, Defendant.

Bankruptcy No. 381–02043.
Adv. No. 381–0396.

United States Bankruptcy Court,
M. D. Tennessee.

March 29, 1982.

Steve C. Norris, Nashville, Tenn., for plaintiff/debtor.

James William Hofstetter, Jr., Nashville, Tenn., for defendant.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was commenced by the debtor, Robert P. Eggleston, to avoid a preferential transfer pursuant to 11 U.S.C. § 522(h). The debtor specifically contends that monies paid to the defendant, Third National Bank (hereinafter "Third National"), within 90 days of the filing of the debtor's Chapter 7 petition pursuant to a garnishment order issued on January 6, 1981, constitutes a preferential transfer within the provisions of 11 U.S.C. § 547(b). The defendant essentially asserts that the transfer of wages occurred when the debtor's employer was served with a copy of the garnishment order on February 20, 1981, which date is more than 90 days prior to the filing of the debtor's petition in this court. A hearing on this matter was held on December 16, 1981. After consideration of the evidence presented at this hearing, stipulations, exhibits, briefs of the parties and the entire record, this court finds that Third National's receipt of garnished wages in the amount of $617.08 ninety days prior to the filing of the debtor's petition was a preferential transfer and therefore Third National must turnover this money to the debtor.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

On October 28, 1980, Third National obtained a judgment against the debtor in the General Sessions Court for Davidson County, Tennessee, in the amount of $1,749.70. Third National subsequently had an execution of garnishment issued on January 6, 1981. A copy of this garnishment was served on the debtor's employer, Seal-

test Milk Company, on February 20, 1981. In April, May and June of 1981, $649.57 was withheld by the garnishee and paid to the General Sessions Court Clerk's office pursuant to § 26–2–215 of the Tennessee Code. After the deduction of the sheriff's commission, Third National received $617.08 in satisfaction of their judgment lien.

The debtor filed a voluntary Chapter 7 petition in this court on June 25, 1981. In his Statement of Affairs and Schedules, the debtor claimed as exempt property pursuant to § 26–2–102 of the Tennessee Code wages garnished by Third National in the amount of $692.03. The debtor received his discharge on October 20, 1981. The debtor now seeks to avoid as a preferential transfer the $617.08 paid to Third National 90 days prior to the filing of the debtor's petition.

The debtor in this case seeks to utilize 11 U.S.C. § 522(h) to avoid a preferential transfer pursuant to 11 U.S.C. § 547. Under § 60(b) [11 U.S.C. § 96] of the prior Bankruptcy Act, only the trustee had the authority to avoid any preferential transfer. Under the Act, the avoidance of preferential transfers was designed to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy" and to insure "equality of distribution among creditors of the debtor." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 177–179, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5963, 6138–6139. With the adoption of 11 U.S.C. § 522(g) and (h) of the Bankruptcy Code, Congress has expanded the purposes of the preferential transfer section to include the avoidance *by the debtor* of a preferential transfer which encumbers the debtor's exemptions, subject to certain restrictions set forth in 11 U.S.C. § 522(g).[1] *See* H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 362–363, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5963, 6318; Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 76–77, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5862.

Section 522(h) allows the debtor to avoid a § 547 preferential transfer if (1) the debtor's transfer of the property in question was not voluntary, (2) the debtor did not conceal such property and (3) the trustee has not attempted to avoid the transfer. The debtor in this case clearly meets these requirements. The garnishment proceeding resulted in an involuntary transfer of the debtor's wages, the debtor did not in any way attempt to conceal this property, and the trustee has not attempted to void the alleged preferential transfer. The debtor may, therefore, initiate a § 547 proceeding to avoid the payments of garnished wages to Third National.

Section 547(b) defines a preferential transfer as a transfer of the debtor's property which was:

"(1) to or for the benefit of creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

---

1. 11 U.S.C. § 522(g) provides:

"(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section."

11 U.S.C. § 522(h) provides in pertinent part:

"(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer if—

(1) such transfer is avoidable by the trustee under section ... 547 ... of this title ... and

(2) the trustee does not attempt to avoid such transfer."

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title.

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

■ The burden is on the debtor to prove each of these elements. *McWilliams v. Gordon*, 12 B.R. 829, 831–832 (Bkrtcy.E.D.Pa. 1981); *Brown v. Callaway Bank*, 7 B.R. 876, 879 (Bkrtcy.W.D.Mo., C.D.1980); *Strickler v. Thomas*, 7 B.R. 389, 393 (Bkrtcy.W.D.Va. 1980). *See also Steel Structures, Inc. v. Star Manufacturing Co.*, 466 F.2d 207, 216 (6th Cir. 1972).

■ The crucial question herein is when did the transfer of the debtor's property occur.[2] Third National contends that the service of the garnishment order on the debtor's employer on February 20, 1981, eliminated any property rights the debtor had in his future wages. Assuming Third National is correct in its assessment, then the transfer of the debtor's property transpired outside the 90 day period specified in 11 U.S.C. § 547(b)(4)(A) and is therefore not avoidable as a preferential transfer. The debtor, however, insists that the transfers of the garnished wages could not occur until the debtor obtained a right in his wages. Under this analysis, the transfers in question would have arisen during the 90 days period preceding the filing of the debtor's petition.

A wide divergence exists among federal courts as to when a garnishment lien divests the debtor of ownership in his wages for the purposes of § 547. Several courts have held that the service of the garnishment order on the debtor's employer creates a "continuing levy" which terminates any legal interest which the debtor has in his future wages. These courts have, therefore, measured the date of the transfer from the date that the garnishment was served on the debtor's employer. *Riddervold v. Saratoga Hospital*, 647 F.2d 342, 344–347 (2d Cir. 1981); *Moratzka v. Bill Simek Distributing, Inc.*, 12 B.R. 936, 937–938 (Bkrtcy.D.Minn.1981); *Woodman v. L.A. Olson Co.*, 8 B.R. 686, 688 (Bkrtcy.W.D.Wis.1981). Other courts, however, have found that the transfer of the debtor's property does not occur until the debtor has obtained a right in his wages. *Evans v. CIT Financial Services, Inc.*, 16 B.R. 731 (Bkrtcy.N.D.Ga.1982); *Baum v. United Virginia Bank*, 15 B.R. 538, 541 (Bkrtcy.E.D. Va.1981); *Cox v. General Electric Credit Corp.*, 10 B.R. 268, 270–272 (Bkrtcy.D.Md. 1981); *See also Poutre v. Emery*, 13 B.R. 689, 690 (Bkrtcy.D.Vt.1981). After a careful examination of both federal bankruptcy law and the Tennessee law on garnishment, this court concludes that the latter view is correct.

Section 67(a)(1) [11 U.S.C. § 107] of the former Bankruptcy Act specifically provided for the avoidance of judicial liens, including garnishment liens. Section 67(a)(1) provided in pertinent part:

"Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void . . . ."

2. The debtor can clearly utilize the provisions of 11 U.S.C. § 547 to attempt to avoid a transfer of personal property resulting from a garnishment proceeding. 11 U.S.C. § 101(40) defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or in-

voluntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." This definition is broad enough to include a garnishment lien. 4 Collier on Bankruptcy ¶ 547.12, at 547–42 (15th ed. 1981).

A judicial lien could also be avoided by the trustee as a preferential transfer under the provisions of § 60(a)(1) [11 U.S.C. § 96] of the Bankruptcy Act. For the purposes of determining whether a preferential judgment had occurred, the transfer of personal property was deemed completed when it had become "so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." § 60(a)(2) [11 U.S.C. § 96].

Under both of these provisions, the critical question was the creation of the judicial lien and not its enforcement. *Metcalf Brothers & Co. v. Barker*, 187 U.S. 165, 174, 23 S.Ct. 67, 71, 47 L.Ed. 122 (1902); *In Re Acorn Electric Supply, Inc.*, 348 F.Supp. 277, 279 (E.D.Va.1972); *Pischke v. Murray*, 11 B.R. 913, 916 (Bkrtcy.E.D.Va.1981). A garnishment lien, therefore, could only be avoided if it was obtained and served on the garnishee within four months prior to the filing of the debtor's petition.

The drafters of the Bankruptcy Reform Act eliminated the dual application of §§ 60 and 67 to the avoidance of judicial liens. The Bankruptcy Code simply allows for the avoidance of judicial liens as preferential transfers within the provisions of 11 U.S.C. § 547(b). As one commentator explained:

"... the provisions of former Section 60 relating to a judgment unnecessarily overlapped the provisions of former Section 67, dealing with the same general subject. This led to considerable confusion, and as a result former section 67 f [sic] was almost always employed to avoid preferential judgments. Section 547(b) of the Code, like the Act, refers simply to transfers of the debtor's property and Section 67(a) of the former Act has been eliminated from the Code as a separate provision.

This eliminates difficulties that arise from the fact that the mere entry of a judgment may or may not create a lien, and thus could hardly give a creditor a preferred standing where something additional was necessary before a lien resulted ... It is now clear that not only any form of a judgment, but any judicial proceeding that fixes a lien upon the property of the debtor and that comes within the other requisites of section 547(b) will constitute a preference. (Footnotes omitted).

4 Collier on Bankruptcy ¶ 547.12, at 547–42 (15th ed. 1981).

For the purposes of establishing whether a transfer is preferential under § 547, Congress delineated specific guidelines to identify at what point a transfer is complete. Section 547(e) provides in pertinent part:

"(e)(1) For the purposes of this section—

(2) ...

(A) ...

(B) A transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(3) For the purposes of this section, *a transfer is not made until the debtor has acquired rights in the property transferred.*" (Emphasis supplied.)

Section 547(e)(3) represents a significant departure from the definition of a transfer under the former Bankruptcy Act. The Act did not require the debtor to have acquired rights in the property before the transfer was deemed complete. The legislative history of § 547(e)(3) reveals that this requirement was added to overrule such cases as *Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co.*, 408 F.2d 209 (7th Cir.), *cert. denied*, 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969) and *DuBay v. Williams*, 417 F.2d 1277 (9th Cir. 1966). H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 374–75, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5963, 6330–6331; Sen. Rep. No. 95–989, 95th Cong., 1st Sess. 88, *reprinted in* [1978] U.S.Code Cong. and Ad. News 5787, 5873–5875. These cases had held that after-acquired collateral transferred to a secured party during the four months preceding the filing of the bank-

ruptcy petition was not a preference if the creditor had perfected its security interest more than four months prior to the bankruptcy petition. *See* Young, *Preferences Under the Bankruptcy Reform Act of 1978*, 54 Am.Bankr.L.J. 221, 232–233 (1980).

Nothing in the legislative history or the statutory language itself, however, implies that the provisions of § 547(e)(3) are limited to transfers involving security interests in after-acquired collateral. The unambiguous and clear language of the statute requires that the provisions of § 547(e)(3) apply to all transfers which are attacked as preferential, including a judicial lien obtained by a garnishment proceeding. For this reason, the transfer of the debtor's wages to the creditor in the present case could not occur until the debtor became entitled to his wages. The debtor simply has no right to wages which have not yet been earned. *See Poutre v. Emery*, 13 B.R. at 690; *Cox v. General Electric Credit Corp.*, 10 B.R. at 271–272.

The Tennessee law on garnishment buttresses the conclusion that the transfer of the debtor's wages did not occur until after the debtor had earned these wages. In *Beaumont v. Eason*, 59 Tenn. (12 Heisk.) 417, 418–421 (1873), the Tennessee Supreme Court presented an extensive analysis of the operation and effect of Tennessee's garnishment laws. The court explained as follows:

"The legal effect of the levy of an execution by garnishment is well settled. The moment the garnishment is served, the debt, being then due, passes out of the control of both the debtor and creditor, and, so to speak, is in the custody of the law. The debt is seized in a legal mode, and placed out of the power of the parties...

... [The service of the garnishment] fixes a lien on the debt or effects in the hands of the garnishee, and he holds them under the control of the court, and acquires a special property in them as agent of the court. As such agent, it is the duty of the garnishee to go to the court with the effects in his hands *be-*

*longing to the debtor*, and make answer according to the requirements of the process of garnishment. When he has answered, admitting his indebtedness, or that he has effects *belonging to the debtor*, the court proceeds to subject them to the satisfaction of the debt.

... The garnishee becomes the agent of the court, not to sell, but to keep and return the property for the action of the court. He is vested with the special title as a custodian of the property, *but not with the title that authorizes him to sell and convey title.* If the debtor sues him for the property, he can interpose his special title for his protection. The title of the debtor is so far divested that he cannot dispute or claim against the special title of the garnishee ... This is the necessary result of the legal fact that the service of the garnishment does no more than vest in the garnishee a special title as a custodian for the court, *and divests the title of the debtor only so far as to restrain his power to regain his property while it is in the custody of the garnishee.* So long as the property is in the custody of the garnishee, the creditor can not resort to his remedy by execution, and if he does so he thereby waives his right to look to the property in the hands of the garnishee, and the debtor at once has the right to reclaim the property." (Emphasis added.)

*See also Cumberland Telephone and Telegraph Co. v. Genkins*, 1 Tenn.C.C.A. (Higgins) 203, 206–207 (1910).

The Tennessee Supreme Court's pronouncement in *Beaumont* continues to correctly state the effect of Tennessee's present garnishment laws. Section 26–2–213 of the Tennessee Code defines the process of obtaining a garnishment lien on debts due and payable in the future as follows:

"If upon disclosure made on oath by the debtor it appears that the garnishee is indebted to the defendant, but that the debt is not payable and will not become due until some future time, then such judgment as the plaintiff may recover shall constitute a lien upon the debt until

and at the time it becomes due and payable."

Section 26–2–215 of the Tennessee Code specifically provides that the garnishee shall *remit to the court* all monies withheld pursuant to the garnishment order issued by the court. Section 26–2–215 does not permit the garnishee to pay the garnished wages directly to the creditor. The debtor, therefore, retains an interest in his wages until such interest is terminated by the court's payment of the garnished wages to the creditor. Under Tennessee law, it is clear that the transfer of the debtor's wages does not occur until the court has paid the monies garnished to the creditor. For the purposes of determining a preferential transfer under federal bankruptcy law, however, the transfer of the debtor's wages is deemed complete when the debtor becomes entitled to his wages.

For these reasons, the court concludes that the transfers in question occurred during the 90 day period preceding the filing of the debtor's petition. Since the creditor has failed to offer any proof to rebut the statutory presumption of 11 U.S.C. § 547(e)(4) that the debtor was insolvent during this 90 day period, the court finds that the debtor was insolvent when Third National received these garnished wages. The remaining criteria set forth in 11 U.S.C. § 547 are easily found in the present case. The payment of the garnished wages to the creditor Third National represented a partial satisfaction of an antecedent debt. Furthermore, since the debtor has listed the garnished wages as exempt property, the payment enabled Third National to obtain more than it would have received in a Chapter 7 liquidation proceeding.

Accordingly, an order will be entered setting aside the payments of $617.08 to Third National as a preferential transfer. The court will further order Third National to turnover this money to the debtor within 15 days of the entering of this order.