FRIENDLY, Circuit Judge:
David B. and Susan R. Riddervold filed voluntary petitions in the Bankruptcy Court for the Northern District of New York for relief under Chapter 7 of the Bankruptcy Reform Act of 1978 (the Code) on December 3, 1979. A month later they filed a complaint against four judgment creditors. In a first cause of action, not at issue on this appeal, they sought to cancel judgment liens recorded in the Saratoga County Clerk’s office in the aggregate amount of $4,367.45 under § 522(f) of the Code to the extent that such liens would impair their equity of some $5,500 in their residence allowed by § 522(d)(1). A second cause of action asserted on behalf of David B. Rid-dervold (hereafter Riddervold) that between September 3 and December 3, 1979, one of the defendants, the Saratoga Hospital, had caused monies to be deducted from his wages by virtue of an income execution served on his employer in the amount of $260; that such monies constituted preferences which Riddervold’s trustee could have avoided; that if the trustee had avoided these payments, Riddervold could have exempted them under the blanket exemption of § 522(d)(5), to wit, $400 plus any unused amount of the exemption provided in § 522(d)(1); but that the trustee had not attempted and would not attempt to recover the alleged preferences. In its answer Saratoga Hospital prayed for judgment dismissing the second cause of action. Bankruptcy Judge Mahoney granted this prayer, and an appeal was taken directly to this court by agreement purportedly pursuant to the authority of 28 U.S.C. § 1293(b).
We are met at the outset with a problem concerning our appellate jurisdiction not noticed by the parties. Title II of the Bankruptcy Reform Act of 1978, § 236, added to Title 28 of the U.S.Code a section reading as follows:
§ 1293(b). Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 of a District court of the United States or from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.
If this statute were presently effective, there would be considerable doubt whether the bankruptcy judge’s order refusing relief on the second cause of action constituted “a final judgment, order, or decree of a bankruptcy court of the United States”. It has been said that § 1293(b) — a radical change from § 24(a) of the former Bankruptcy Act —“was obviously modelled” on § 1291, allowing appeals from “final decisions” of district courts, 1 Collier, Bankruptcy § 3.03 at 3-309 (15th ed. 1980). Under the doc *344 trines developed pursuant to that section, appellate jurisdiction would be defeated, in a proceeding such as this, since the first cause of action apparently remains pending, see Hardin v. M/V Ben Candies, 549 F.2d 395 (5 Cir. 1977); Republic of China v. American Express Co., 190 F.2d 334, 338-39 (2 Cir. 1951); Flegenheimer v. Manitoba Sugar Co., Ltd., 182 F.2d 742 (2 Cir. 1950); 6 Moore, Federal Practice 1154.28[2] (1976), and the bankruptcy judge has made no certificate under F.R.Civ.P. 54(b) which was made applicable to adversary proceedings in bankruptcy by Bankruptcy Rule 754. However, under § 402(b) of the 1978 Act, the amendment adding § 1293 to Title 28 does not take effect until April 1, 1984. During the “transition period”, see § 404(b), § 405(c)(1) provides in pertinent part that “an appeal from a judgment, order, or decree of a United States bankruptcy judge” may be taken
(B) if the parties agree to a direct appeal to the court of appeals for such circuit, then to such court of appeals.
It seems therefore that, for whatever reason, Congress did not intend the finality requirement of the new § 1293(b) to apply to appeals taken to the courts of appeals from orders of bankruptcy judges by agreement during the transition period.
The Hospital’s claim here at issue arose from medical treatment rendered to Susan R. Riddervold in 1976 and 1977. When the Hospital’s bill was not paid, at least in full, it obtained a New York state court judgment, in the amount of $1,410.50 against Mr. Riddervold on March 17, 1977, which it recorded in the office of the Saratoga County Clerk. On January 17, 1978, it served an “income execution” pursuant to this judgment upon Riddervold’s employer, the State of New York, under N.Y.C.P.L.R. § 5231. Under this execution the State made two payments aggregating $227[1] to the Hospital from wages otherwise payable to Rid-dervold within 90 days of the petition in bankruptcy. Riddervold contends that these payments constituted preferences which his trustee could have avoided under § 547 and that since the trustee has not taken and will not take proceedings to that end, Riddervold is entitled to do so under § 522(h).[2] The validity of this contention depends on applying the section of the 1978 Code relating to preferences, § 547, to the result of the action taken by the Hospital under N.Y.C.P.L.R. § 5231.
Section 547 of the 1978 Code completely rewrote § 60, the preference section of the Act of 1898 as amended, and removed or altered related material that had previously been dealt with in the lien provision, § 67. The key provision for this case is § 547(b). This allows the trustee to “avoid any transfer of property of the debtor”, to or for the benefit of a creditor, for or on account of an antecedent debt, made while the debtor was insolvent[3] and within specified periods, here 90 days, before the filing of the petition and that enables the creditor to receive “more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.”
Apparently the Riddervolds’ exemptions exceeded their debts so that the Hospital would have received nothing under this test. Section 101(40) broadly defines “transfer” to include “every mode, direct or *345 indirect, absolute or conditional, voluntary or involuntary, or [sic] disposing of or parting with property or with an interest in property, including retention of title as a security interest.” We quote in the margin the pertinent provisions of N.Y.C.P.L.R. § 5231 entitled “Income Execution.”[4] Since the income execution was issued on January 17, 1978, it is safe to assume that the steps to and including the levy on the employer occurred long before the 90 days prior to the bankruptcy petition of December 3,1979. Riddervold has not claimed the contrary.
There is a dearth of authority on the question whether payments by an employer during the crucial period — then four months — to a judgment creditor who had levied on the employer before the beginning of that period under N.Y.C.P.L.R. § 5231 and its predecessors, N.Y.C.P.A. § 684 and § 1391 of the N.Y. Code of Civil Procedure, constituted preferences under § 60 of the Bankruptcy Act of 1898 if the other requirements of that section were met. Indeed we have been cited to none.[5] Such cases as have been called to our attention or been found by our own research dealt with the provision of § 67 invalidating liens obtained within the four-months period rather than the recovery of preferences; they arose when the creditor sought modifi *346 cation of a stay of state court proceedings so as to enable him to collect moneys in the hands of the employer or the sheriff and the bankrupt opposed.
Early in his judicial career Judge L. Hand held in In re Sims, 176 F. 645 (S.D.N.Y. 1910), that moneys withheld from the bankrupt’s salary under a levy under § 1391 of the New York Code of Civil Procedure more than four months old at the date of the bankruptcy and still in the hands of the sheriff at the date of adjudication belonged to the creditors, whereas post-adjudication earnings of the bankrupt did not. On the former point he reasoned that the execution operated as a “continuing levy”. In re Beck, 238 F. 653 (S.D.N.Y.1915), involved a portion of Beck’s salary retained by the city paymaster pursuant to an execution under the same statute also long antedating the bankruptcy. Without referring to In re Sims, supra, and in misplaced reliance on Clarke v. Larremore, 188 U.S. 486, 23 S.Ct. 363, 47 L.Ed. 555 (1903), not a garnishment case, where the judgment, levy and execution all occurred within the four-months period, Judge Hough held that the trustee was entitled to such moneys still in the paymaster’s hands as represented retentions during the four-month period. He argued that “there could be no levy upon Beck’s salary until there was a salary to levy upon. Therefore the date of levy is coincident with the date of accruing wage.” However, he also held that if the debtor did not receive a discharge, amounts retained after the beginning of the four-months period and indeed after the adjudication should be payable to the judgment creditor. Judge Hough’s reasoning had scant appeal to Judge Mayer, a judge with great experience in bankruptcy, when he was shortly confronted with a similar problem in In re Wodzicki, 238 F. 571 (S.D.N.Y.1916). He expressed a preference for Judge Hand’s “continuing levy” theory, sought to confine In re Beck to the decision that only the trustee and not the bankrupt could obtain the money in the hands of the city paymaster, and upheld rights of the judgment creditor, as against those of the bankrupt, to moneys in the city paymaster’s hands representing collections during the four-months period. However, the contest was simply between the bankrupt and the judgment creditor, no trustee having been appointed. Finally, in In re Prunotto, 51 F.2d 602 (W.D.N.Y.1931), Judge Knight followed the portion of Judge Hand’s In re Sims decision which denied the validity of the execution against post-adjudication wages on the basis that to uphold this would conflict with the provisions of the Bankruptcy Act with respect to discharge.
In principle it does not appear to us that the State’s paying $227 to the hospital during the 90-day period now provided by § 547(b)(4)(A) constituted a “transfer of property of the debtor.” This is not because Riddervold took no action to cause the payments to be made, since “transfer” is defined to include an involuntary transfer. It is rather because after the sheriff has taken the step described in N.Y.C.P.L.R. § 5231(d), the debtor has no property or interest in property subject to the levy which can be transferred. Service of the income execution on the employer in effect works a novation whereby the employer owes 10% of the employee’s salary not to the employee but to the sheriff for the benefit of the judgment creditor. This view is substantiated by the provision in N.Y.C.P.L.R. § 5231(e) that if the employer fails to pay the sheriff, the judgment creditor may sue the employer to recover accrued installments.
It is true that the employer comes under no liability to pay the sheriff until the wages are earned. Indeed the last sentence of N.Y.C.P.L.R. § 5231(e) expressly provides for this eventuality of stating that if “employment is terminated by resignation or dismissal . . . , the levy shall thereafter be ineffective.” But this does not require us to hold that the portion of the salary subject to the income execution vests in the employee for a fleeting second after it has been earned, when in fact the employer becomes bound at that very time to pay it to the sheriff.
*347 We emphasize that we are here concerned with payments which were not made simply in discharge of a lien[6] but were pursuant to an execution levied many months before the beginning of the 90-day period. Our decision follows the “continuing levy” principle announced by Judge L. Hand and adopted by Judge Mayer under the Act of 1898 scores of years ago.[7] It seems also to conform to the intimations of Clarke v. Larremore, supra, 188 U.S. at 488-90, 23 S.Ct. at 364-365, that when a writ of execution under a valid lien has been fully executed by payment to the execution creditor, a subsequent bankruptcy does not affect the creditor’s rights. To be sure, these eases were decided under the Act of 1898 but wé find nothing in the language or the policy of the 1978 Code that forbids their continued application.
Affirmed.

. There is some confusion about how much money actually was withheld. The complaint puts the figure at $260 while Judge Mahoney states that approximately $250 is involved. The $227 figure comes from the appellant’s brief on this appeal.

. This provides:
(h) The debtor may avoid a transfer of property of the debtor or recover a set off to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
(2) the trustee does not attempt to avoid such transfer.

. Section 547(f) creates a presumption of insolvency during the 90 days preceding the filing of the petition.

. § 5231. Income execution.
(a) Form. An income execution shall specify, in addition to the requirements of subdivision (a) of section 5230, the name and address of the person from whom the judgment debtor is receiving or will receive money; the amount of money, the frequency of its payment and the amount of the installments to be collected therefrom; and shall contain a notice to the judgment debtor that he shall commence payment of the installments specified to the sheriff forthwith and that, upon his default, the execution will be served upon the person from whom he is receiving or will receive money.
(b) Issuance. Where a judgment debtor is receiving or will receive more than eighty-five dollars per week from any person, an income execution for installments therefrom of not more than ten percent thereof may be issued and delivered to the sheriff of the county in which the judgment debtor resides or, where the judgment debtor is a non-resident, the county in which he is employed.
(c) Service upon debtor. Within twenty days after an income execution is delivered to the sheriff, the sheriff shall serve a copy of it upon the judgment debtor, in the same manner as a summons or, in lieu thereof, by certified mail return receipt requested provided additional copies are sent by regular mail as follows: (i) to the debtor; and (ii) to the debtor in care of his last known employer. If service is by mail as herein provided, the person effecting service shall retain the receipt together with a post office certificate of mailing as proof of such service.
(d) Levy upon default or failure to serve a debtor. If a judgment debtor fails to pay installments pursuant to an income execution served upon him for a period of twenty days, or if the sheriff is unable to serve an income execution upon the judgment debtor within twenty days after the execution is delivered to the sheriff, the sheriff shall levy upon the money that the judgment debtor is receiving or will receive by serving a copy of the income execution, indorsed to indicate the extent to which paid installments have satisfied the judgment, upon the person from whom the judgment debtor is receiving or will receive money personally within the county in the same manner as a summons or by certified mail return receipt requested, except that such service shall not be made by delivery to a person authorized to receive service of summons solely by a designation pursuant to a provision of law other than rule 318.
(e) Withholding of installments. A person served with an income execution shall withhold from money then or thereafter due to the judgment debtor installments of ten percent thereof and pay them over to the sheriff. If such person shall fail to so pay the sheriff, the judgment creditor may commence a proceeding against him for accrued installments. If the money due to the judgment debtor consists of salary or wages and his employment is terminated by resignation or dismissal at any time after service of the execution, the levy shall thereafter be ineffective, and the execution shall be returned, unless the debtor is reinstated or re-employed within ninety days after such termination.

. Under § 60(b) of the 1898 Act only the trustee could avoid a preference. In view of the accepted learning that “[a] preference is not an act evil in itself but one prohibited by the Bankruptcy Act in the interest of equality of division,” Canright v. General Finance Corp., 35 F.Supp. 841, 844 (E.D.Ill.940), aff'd, 123 F.2d 98 (7 Cir. 1941), see 4 Collier, Bankruptcy H 547.01 (15th ed. 1980), it is not clear why the 1978 Code extended the power to avoid preferences to bankrupts. However, it unquestionably did, subject to certain restrictions set forth in § 522(g), none of which is applicable here.

. We note that if an income execution under N.Y.C.P.L.R. § 5231 was a statutory lien, § 547(c)(6) would bar avoidance since the conditions of § 545 for avoiding the fixing of such liens were not met. However, § 5231 proce-' dures do not create a statutory lien, as defined by § 101(38), since an income execution does not arise “solely by force of a statute.”

. To the extent that our decision runs counter to the views expressed by Judge Hough in In re Beck, supra, we prefer the reasoning of Judges L. Hand and Mayer.