In re Thomas Rye PERRY and Jeri Lynn Perry, Debtors.

Thomas Rye PERRY, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant.

Bankruptcy No. 383–01920.
Adv. No. 383–0590.

United States Bankruptcy Court,
M.D. Tennessee.

April 22, 1985.

Daniel C. Masten, Nashville, Tenn., for debtors.

D. Reed Houk, Nashville, Tenn., for defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The defendant in this action to recover a preference invites reconsideration of the rule announced in this district in *Eggleston v. Third National Bank*, 19 B.R. 280, 9 BANKR.CT.DEC. (CRR) 44 (Bankr.M.D. Tenn.1982). *Eggleston* held that wages garnished from a debtor within 90 days of a bankruptcy petition may be preferential transfers though the garnishment lien was executed upon the debtor outside of the 90-day preference period. The defendant argues that *Eggleston* is incorrect for the reasons stated in two circuit decisions rendered since *Eggleston*. *See Askin Marine Co. v. Conner*, 733 F.2d 1560, 1561 (11th Cir.1984); *In re Coppie*, 728 F.2d 951, 952 (7th Cir.1984), *cert. denied sub nom., Gouveia v. Hammond Clinic*, —— U.S. ——, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985). *See also Riddervold v. Saratoga Hospital*, 647 F.2d 342, 344 (2d Cir.1981). For the reasons stated below, this court believes that *Eggleston* is correctly decided.

The following constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(F).

### I.

On August 25, 1981, General Motors Acceptance Corporation ("GMAC") obtained a judgment for $2,344.93 against Thomas Rye Perry ("Perry") in the Metropolitan General Sessions Court for Davidson County, Tennessee. Perry made several voluntary payments to GMAC and paid part of the judgment through a garnishment. On March 10, 1983, GMAC executed a second

garnishment. The writ was served on Perry's employer on April 13, 1983.

On July 22, 1983, Perry filed a Chapter 7 petition.[1] Within the 90 days prior to the filing of Perry's petition, GMAC received $751.61 pursuant to its garnishment.[2] Perry scheduled the garnished wages as exempt property and filed a complaint to recover the garnished wages from GMAC as preferential transfers.[3] The matter is before the court on cross-motions for summary judgment.

## II.

The Bankruptcy Code prescribes six elements that must be proven before a transfer is an avoidable preference: (1) the transfer of property of the debtor; (2) to or for the benefit of a creditor; (3) on account of an antecedent debt; (4) while the debtor was insolvent; (5) within 90 days before the filing of a petition; and (6) that enables the creditor to receive more than it would have received if the transfer had not been made and the case was under Chapter 7. 11 U.S.C.A. § 547(b). The trustee or debtor bears the burden of proof on each of these elements.[4] *See Eggleston* at 282. *See also Steel Structures, Inc. v. Star Mfg. Co.*, 466 F.2d 207, 216 (6th Cir.1972).

In *Eggleston,* Judge Paine of this court held that a transfer of wages pursuant to a garnishment occurs when the debtor actually earns or otherwise becomes entitled to the wages. For preference purposes, he found this conclusion was required by 11 U.S.C.A. § 547(e)(3).[5] This holding is supported by much authority. *See Matter of Morton,* 44 B.R. 750 (Bankr.N.D.Ga.1984); *Tabita v. Internal Revenue Service,* 38 B.R. 511, 12 BANKR.CT.DEC. (CRR) 41 (Bankr.E.D.Pa.1984); *Button v. Noe,* 29 B.R. 118, 120 (Bankr.E.D.Tenn.1983); *Larson v. Olympic Finance Co.,* 21 B.R. 264, 270 (Bankr.D.Utah 1982); *Walden v. First Tennessee Bank,* 19 B.R. 901 (Bankr.E.D. Tenn.1982); *Mayo v. United Services*

**1.** Perry filed a joint petition with his wife Jeri Lynn Perry. Mrs. Perry is not a party to this adversary proceeding.

**2.** The parties stipulated this amount. Perry later alleged that $814.12 was garnished.

**3.** Perry uses 11 U.S.C.A. § 522(h) (West 1979) to avoid an allegedly preferential transfer pursuant to § 547. Under § 60(b) of the former Bankruptcy Act, it was generally held that only the trustee had authority to avoid a preferential transfer. With the adoption of 11 U.S.C.A. § 522(g) and § 522(h) (West 1979), Congress authorized the debtor's avoidance of a preferential transfer that encumbers exemptions as an enhancement of the debtor's "fresh start." H.R. REP. NO. 595, 95th Cong., 1st Sess. 362–363 (1977); S.REP. NO. 989, 95th Cong., 2d Sess. 76–77 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. *See Straight v. Williamette Collection Service, Inc., 35 B.R. 445, 446 (Bankr.D. Or.1983).* Section 522(h) provides in relevant part:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
> (1) such transfer is avoidable by the trustee under section ... 547 ... of this title ...; and
> (2) the trustee does not attempt to avoid such transfer.

Section 522(g) provides that:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property ... to the extent that the debtor could have exempted such property under subsection (b) ... if such property had not been transferred, if—
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
> (B) the debtor did not conceal such property.

Perry satisfies these criteria: the garnishment was an involuntary transfer of his wages, Perry did not conceal the wages, and the trustee did not file a complaint to avoid the transfers.

**4.** If *Eggleston* is still the law of this district, the parties agree that the garnished wages constitute preferential transfers. The garnishment was for the benefit of GMAC and was on account of an antecedent judgment debt. Under 11 U.S.C.A. § 547(f) (West 1979) the debtor is presumed to be insolvent during the 90 days preceding bankruptcy and GMAC did not rebut the presumption. The trustee filed a no asset report and the garnishment enabled GMAC to receive more than it would have received in a Chapter 7 liquidation. Consequently, the garnishment was preferential if it constituted a transfer of property within the 90-day period preceding the filing of the bankruptcy petition.

**5.** 11 U.S.C. § 547(e)(3) provides:

> For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

*Automobile Ass'n.*, 19 B.R. 630, 632 (E.D. Va.1981); *Evans v. CIT Financial Services, Inc.*, 16 B.R. 731, 733 (Bankr.N.D.Ga. 1982); *Poutre v. Emery*, 13 B.R. 689, 690 (Bankr.D.Vt.1981); *Brengle v. Wilmington Trust Co.*, 10 B.R. 360, 362 (Bankr.D.Del. 1981); *Cox v. General Electric Credit Corp.*, 10 B.R. 268, 270 (Bankr.D.Md.1981). Judge Paine examined the Tennessee garnishment law and determined that the garnishee "retains an interest in his wages until such interest is terminated by the court's payment of the garnished wages to the creditor." *Eggleston* at 285. *See Walden v. First Tennessee Bank*, 19 B.R. 901 (Bankr.E.D.Tenn.1982) (same view of Tennessee law). The court held that payment of garnished wages to a creditor within the 90-day period was a transfer of the debtor's property and could constitute a preference if the other elements identified above are present.

GMAC asserts that *Eggleston* incorrectly focused on the date the wages were earned by the debtor rather than whether the debtor had any "property interest" in the garnished wages after service of the original writ. I disagree with GMAC's interpretation of *Eggleston*.

▪ In *Eggleston*, Judge Paine correctly determined that the debtor retains a property interest in garnished wages under Tennessee law sufficient to support a § 547 action. In Tennessee, garnishment is not a magical or mysterious super-power of collection for creditors; it is but one method among many by which creditors are permitted under state law to levy on a debtor's property to satisfy a debt. Under Tennessee law, a garnishment is merely a lien on the debtor's wages. TENN.CODE ANN. § 26–2–214(4) clearly provides that "a garnishment *is a lien on salaries, wages, or other compensation* due at the time of the service of the execution." (emphasis added). A lien is a charge or an incumbrance on property to secure payment or performance of debt, duty, or other obligation. *United States v. Kentucky Home Mutual Life Insurance Co.*, 292 F.2d 39 (6th Cir.), *cert. denied*, 369 U.S. 803, 82 S.Ct. 642, 7

L.Ed.2d 550 (1961); *In re Harpeth Motors*, 135 F.Supp. 863 (M.D.Tenn.1956); *Shipley v. Metropolitan Life Insurance Co.*, 25 Tenn.App. 452, 158 S.W.2d 739 (1942). A garnishment lien does not allow an immediate right of possession but affords security for the payment of the judgment underlying the garnishment.

*Eggleston* cites *Beaumont v. Eason*, 59 Tenn. (12 Heisk) 417 (1873). In *Beaumont*, the Tennessee Supreme Court conducted an extensive analysis of the operation and effect of Tennessee's garnishment statute. The court explained:

> The legal effect of the levy of an execution by garnishment is well settled. . . . [The service of the garnishment] fixes a lien on the debt or effects in the hands of the garnishee, and he holds them under the control of the court, and acquires a special property in them as agent of the court. As such agent, it is the duty of the garnishee to go to the court with the effects in his hands belonging to the debtor and make answer according to the requirements of the process of garnishment. When he has answered, admitting his indebtedness, or that he has effects belonging to the debtor, the court proceeds to subject them to the satisfaction of the debt. . . . The garnishee becomes the agent of the court, not to sell, but to keep and return of the property for the action of the court. He is vested with the special title as a custodian of the property, but not with the title that authorizes him to sell and convey title . . . *This is the necessary result of the legal fact of the service of garnishment does no more than vest in the garnishee a special title as a custodian for the court, and divests the title of the debtor only so far as to restrain his power to regain his property while it is in the custody of the garnishee.*

*Beaumont* at 418–421 (emphasis added).

In *Cumberland Telephone and Telegraph Co. v. Jenkins*, 1 Tenn.C.C.A. (Higgins) 203, 206 (1910), the court again considered the "trustee" relationship between the garnishee and the debtor noting

that "the service of the garnishment writ creates a lien upon the funds of the debtor in the hands of the garnishee and virtually makes him a trustee of those funds; and as such trustee, he must duly account for them in the attacking Court." The court emphasized that:

> We understand the law further to be that the garnishee, after service of process, must retain the debt or funds attached, and must bring them into Court and have the Court decide the relative rights of the judgment creditor, the judgment debtor, and himself.

*Cumberland Telephone* at 207. Elsewhere, the Tennessee courts describe execution of the garnishment as in the nature of a "sequestration of the effects of the debtor" to secure payment of a judgment. *Rucker v. Aymett,* 186 Tenn. 672, 212 S.W.2d 659, 661–662 (1948).

Under Tennessee law, the *property* of the debtor which is levied upon pursuant to a wage garnishment is the *debt* between the debtor and his or her employer and that debt does not come into existence until wages are earned by the debtor. For example, in *Rowland v. Quarles,* 20 Tenn. App. 470, 100 S.W.2d 991 (1936) *cert. denied,* (1937), the Tennessee court addressed the situation where a wage garnishment was served upon an employer who was paying the judgment/debtor (employee) in advance. The court first noted that "the procedure of garnishment is purely statutory" and a garnishee (here, employer) is required to answer: "whether he is, ... indebted to the defendant.... Whether he had in his possession ... any property, debts, or effects belonging to the defendant...." Consistent with the general rule that "garnishment process can reach only debts absolutely existing," the court held that garnishment process in Tennessee cannot reach wages noncollusively paid in advance by an employer to the debtor/defendant because such advance payments are voluntary, do not constitute debts between the garnishee and defendant and thus "there were none of the defendant's funds over which the court could exercise control ..." 100 S.W.2d 995.

Under Tennessee law a debtor retains important and substantial interests in garnished wages after service of the writ on the debtor's employer. These residual rights and interests are afforded due process protections by Tennessee law. When the garnishment summons is served on the employer/garnishee, Tennessee law requires that the debtor be given a notice informing the debtor of the following rights:

> TO THE DEBTOR: Your earnings have been subjected *to the lien of a garnishment....* You have the right to apply to the court for an order suspending further garnishments ... upon such terms as the court may approve. The court clerk shall provide you with necessary forms ... you may wish to seek counsel....

TENN.CODE ANN. § 26–2–216 (emphasis added). When the debtor becomes entitled to receive wages (i.e., when a *debt* between the debtor and his employer comes into existence) the garnishment requires the employer/garnishee to segregate the funds subject to garnishment and to pay them not to the creditor, but to the clerk of the appropriate state court. By statute the debtor then has the right to move the court to be allowed to make installment payments and to halt the garnishment. TENN.CODE ANN. § 26–2–216. Tennessee law requires that the judgment debtor be given "due notice ... and ... full hearing" of such a motion and the filing of the motion by the judgment debtor "shall stay the issuance, execution or return of any writ of garnishment against wages or salary due the judgment debtor ..." *Id.* The debtor has the right to recover the wages if they are wrongfully paid or if the judgment is satisfied, expires, voided or otherwise fails. The debtor can exempt certain wages and, therefore, complete divestment cannot occur at least until the debtor's entitlement to the exemptions is determined. TENN.CODE ANN. § 26–2–101 *et seq.*

Wages subject to a garnishment lien are considered to be the judgment debtor's property for many other purposes. The wages are taxed. Social Security deductions are made from the wages. The wages are counted in determining the debtor's potential entitlement to government benefit programs.

The entirety of these rights constitutes a substantial property interest. *Eggleston* correctly so determined.

■ The recent circuit decisions relied upon by GMAC are either based on provisions of the laws of other states which are not analogous to Tennessee law or are based on interpretation of the Bankruptcy Code which we do not believe would be adopted in this circuit. Since our decision in *Eggleston,* two United States Courts of Appeals have held that when a garnishment is served outside the 90-day preference period, wages earned but garnished within the 90-day period are not recoverable as preferences.[6] *Askin Marine Co. v. Conner,* 733 F.2d 1560 (11th Cir.1984); *In re Coppie,* 728 F.2d 951, 952 (7th Cir.1984), *cert. denied sub nom., Gouveia v. Hammond Clinic,* — U.S. —, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985). The *Coppie* court, consistent with the earlier decision of the Second Circuit in *Riddervold,* held that execution of a garnishment created a "continuing levy" that terminated all property interests that a debtor could obtain in his future wages. The United States Court of Appeals for the Seventh Circuit explained this rationale and specifically rejected *Eggleston's* reliance on § 547(e)(3):[7]

The most important distinction is that *under Indiana law, the debtors retained no interest in 10% of their future wages following the entry of the* garnishment orders. In contrast, the filing of financing statements in *Grain Merchants* did not transfer ownership of the debtors future accounts receivable; the debtor would acquire some rights in the future accounts receivable when the accounts receivable came into existence. *Section 547(e)(3) does not come into play in this case simply because after a garnishment order providing for a continuing lien is entered ... a debtor will never acquire rights in the portion of his or her wages to be garnished in the future.* Once a garnishment order has been entered by a court, the debtor's rights in 10% of his or her future wages are irrevocably transferred to the garnishment plaintiff.

*Coppie* at 953 (emphasis added). *Conner,* without reliance on state law, and without reference to § 547(e)(3), held that the "transfer" for § 547 purposes occurred when the original garnishment levy was filed.

If it makes sense at all, the "continuing levy" concept offered in *Riddervold* and applied in *Coppie* operates only in a state which would recognize execution of the original writ of garnishment as accomplishing the complete end to the debtor's legal and equitable rights in future wages.[8] Citing early New York authority and in particular some analysis by Judge Learned Hand, the *Riddervold* and *Coppie* courts found that garnishments under the respective state laws there at issue constitute a "continuing levy" capturing earnings as they come due but effecting a complete divestment into the future of all interests the debtor could have in those future earnings.

---

6. Decisions by United States Courts of Appeals from other circuits are entitled to deference and are persuasive precedents, but are not controlling on trial courts in this circuit. *See, e.g., Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981); *Securities and Exchange Commission v. Shapiro,* 494 F.2d 1301, 1306 n. 2 (2d Cir.1974); *United States v. Mitchell,* 432 F.2d 354, 356 (1st Cir.), *cert. denied,* 401 U.S. 910, 91 S.Ct. 872, 27 L.Ed.2d 808 (1970).

7. Neither *Riddervold* nor *Conner* addressed the effect of § 547(e)(3).

8. Although this court does not purport to be an authority on the peculiarities of the New York, Indiana, or Georgia law relating to garnishments, we have now twice examined the Tennessee law of garnishment and we are fully satisfied that Tennessee law preserves important rights in a debtor's garnished wages which would trigger § 547 of the Bankruptcy Code.

In the opinion of this court, the "continuing levy" concept begs the question whether the debtor has a right or interest in future wages sufficient to constitute property for preference purposes. Indeed it is true under Tennessee law that a garnishment *lien* "continues" by statute for three months after original service of the writ and attaches to earnings becoming due to the judgment debtor during that time, unless certain conditions occur (for example—installment payments, discussed above; a court order; retirement of the underlying judgment). The fact that the garnishment lien continues and attaches to earnings is not dispositive of the question whether the debtor also acquires rights and interests in the same wages as they are earned.

Tennessee law requires the holding that a judgment debtor acquires rights or interests in property before the "continuing levy" of a garnishment lien acts to affect that property. As demonstrated above, the existence of a *debt* between the judgment debtor and the garnishee is a prerequisite to the possibility of a wage garnishment under Tennessee law. *See Rowland* discussed *supra.* Under Tennessee law, the "continuing levy" is not to the exclusion of the existence of the debt, but rather the debt is the precondition to the operation of the levy. The debt itself is the essence of an interest in property. "Continuing levy" is a process notion—once a debt exists, a creditor's lien can attach to it. *Riddervold*

and *Coppie* notwithstanding, this court believes that a "continuing levy" operates not to the exclusion of the debtor's interest in property, rather the levy depends upon the existence of that interest.

The Seventh Circuit's emasculation of § 547(e)(3) and the Eleventh Circuit's failure to focus on that subsection renders both *Coppie* and *Conner* less persuasive on further analysis. This court reaffirms its holding in *Eggleston* that § 547(e)(3) controls the determination of the date of transfer and is not limited to after-acquired property clauses as suggested by the Seventh Circuit. *See Coppie* at 953.[9] For the purpose of establishing whether a transfer is preferential, Congress enacted specific criteria to identify when a transfer occurs. Section 547(e)(3) (reproduced in the margin above) represents a radical departure from practice under the Bankruptcy Act. Under the Act, it was unnecessary for the debtor to acquire rights in the property before a transfer was complete. *See, e.g., Grain Merchants of Indiana, Inc. v. Union Bank & Savings Co.,* 408 F.2d 209 (7th Cir.) *cert. denied,* 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969); *DuBay v. Williams,* 417 F.2d 1277 (9th Cir.1966).[10] The legislative history reveals, however, that § 547(e)(3) was added to overrule these cases and conform the Bankruptcy Code to the commercial practices applied under the Uniform Commercial Code.[11] H.R.REP. NO. 595, 95th Cong., 1st Sess. 374 (1978);

9. The scope of § 547(e)(3) has also been debated outside the garnishment context. In *Diversified World Investments, Ltd. v. Omni International, Ltd.,* 12 B.R. 517, 519 (Bankr.S.D.Tex. 1981), the court addressed whether an assignment of rents outside the ninety day period constituted a preference and noted that:
 Although not specifically considered by the legislative history, the court believes that § 547(e)(3) was intended to bring payments made pursuant to an assignment within the term "transfer" ... Thus while indirect, *the rental payments were made when Diversified obtained a right to receive them and not at the time of assignment.* (emphasis added).
 *But see Beck v. International Harvester Credit Corp. (In re E.P. Hayes, Inc.),* 29 B.R. 907, 911 (faced with the question whether payments received by a creditor within the 90-day preference period made pursuant to an assignment of

lease payments executed by the debtor prior to the 90-day period held that "no basis exists for construing § 547(e)(3) as affecting settled law beyond its effect on after-acquired property clauses.").

10. These cases held that collateral transferred to the secured party pursuant to an after-acquired property clause within four months preceding the filing of the bankruptcy petition was not a preference if the creditor had perfected a security interest in after-acquired property more than four months prior to the bankruptcy petition.

11. Section 547(e)(3) is similar to the Uniform Commercial Code provision that a security interest cannot attach until "the debtor has rights in the collateral." *See, e.g.,* TENN.CODE ANN. § 47–9–204(1).

598

S.REP. NO. 989, 95th Cong., 1st Sess. 88 (1978).

 Nothing in the statutory language or the legislative history limits § 547(e)(3) to security interests in after-acquired property. It is illogical to refuse to apply § 547(e)(3) to all plainly analogous situations. The discussion of *Grain Merchants* in the legislative history is merely illustrative of, not the exclusive application of, § 547(e)(3). The language of § 547(e)(3) unambiguously applies to *all* allegedly preferential transfers. One court has noted that it would be contrary to established canons of statutory construction [12] to restrict the operation of the statute to a single circumstance mentioned, but not specified as exclusive in the legislative history. We are fully cognizant that our interpretation of section 547(e)(3) may have far-reaching ramifications. However, we conclude that had Congress intended to restrict the reach of that section to only those security interests involving after-acquired property clauses, it would have done so in the statutory language itself. *Tabita* at 515.

 The transfer of a debtor's wages can not occur until the debtor becomes entitled to be paid. *See Rowland, supra.* When the garnishment was originally executed, the creditor obtained nothing more than a lien on the debtor's right to receive wages if and when the services were rendered and the wages earned.[13] The date of transfer for purposes of § 547(b), therefore, is the date the wages were actually earned. *See Matter of Morton*, 44 B.R. 750 (Bankr.N.D.Ga.1984) (*distinguishing In re Conner*).

 *Riddervold, Coppie* and *Conner* oversimplify the concept of "property" for bankruptcy purposes. The Supreme Court has repeatedly recognized that property is not singular, but is comprised of a "bundle of rights" and multiple divisible interests. *See, e.g., United States v. Security Industrial Bank*, 459 U.S. 70, 76, 103 S.Ct. 407, 411, 74 L.Ed.2d 235, 241 (1982); *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). "Property" refers to all the various rights and interest that accompany the res, including but not limited to, the right to possess, to enjoy, to trans-

---

**12.** The primary reference point for interpreting a particular provision is the statutory language, and absent a clearly expressed legislative intent to the contrary, that language should be conclusive. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Legislative history should not be used to restrict the plain meaning of a statutory provision or to preclude the reasonable interpretation thereof. *See* 2 NORTON BANKR.L. & PRAC. § 32.27 (1984 Supp.) ("Application of 547(e)(3) to this [garnishment] setting would be consistent with the treatment of after-acquired security interests and would create a uniform, rational result more consistent with basic bankruptcy policies.").

**13.** One court explained:

A writ of garnishment may well be a duly perfected lien on wages yet to be earned such that a creditor on a simple contract cannot acquire a judicial lien that is superior to the rights of the judgment creditor ... Nonetheless, the avoidance powers under § 547(b) extend to the avoidance of transfers rather than perfection of liens. Inasmuch as § 547(e)(3) establishes that a transfer does not occur until the debtor has rights in the collateral, *the transfer of wages garnished pursuant to a writ of garnishment cannot occur until the judgment debtor has earned the wages garnished.* Thus, a payment on the garnishment attributable to wages earned by the debtor within ninety days of the filing of a bankruptcy petition is a preferential transfer to a judgment creditor.

*Cox v. General Electric Credit Corp.*, 10 B.R. at 271–272 (emphasis added). The court in *Tabita v. Internal Revenue Service*, 38 B.R. 511, 515 (Bankr.E.D.Pa.1984) further emphasized that:

[C]ontrary to the reasoning expressed by the Second Circuit in *Riddervold*, we find that section 547(e)(3) of the Code "requires" us to hold that the portion of the debtor's salary subject to the wage attachment vests in the debtor-employee when he has performed the services for which he is entitled to be paid. Until that time, the debtor has not "acquired rights" in his wages. Consequently, since, as a matter of federal bankruptcy law, the debtor acquired rights in his wages when he earned them, those wages collected ... within the preference period are avoidable under section 547(b) of the Code.

fer, and the right to recover ownership. *See First Charter Land Corp. v. Fitzgerald,* 643 F.2d 1011, 1015 (4th Cir.1981).

The multiplicity of property rights and interests was vividly recognized in the bankruptcy context by the Supreme Court in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Discussing the concept of "property of the estate" in the context of a turnover action to recover property seized by the IRS prepetition, the Court held that "while there are explicit limitations on the reach of § 542(a) [turnover], none requires that the debtor hold a *possessory interest* in the property at the commencement of the reorganization proceedings." *Id.* 103 S.Ct. at 2313–14, 76 L.Ed.2d at 522–523 (emphasis added). The Court found that "the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *Id.* 103 S.Ct. at 2315, 76 L.Ed.2d at 524.

The rights and interests remaining in the debtor after levy and seizure by the IRS in *Whiting Pools* were found by the Supreme Court to be sufficient interests to constitute property of the estate under § 541 and to support recovery under § 542. In the many ways detailed above, the rights of a wage earner in future wages subject to the lien of a garnishment are at least as great under Tennessee law.[14] In this court's opinion, *Eggleston* is consistent with *Whiting Pools. Conner* and *Coppie* are not obviously reconciled with the discussion of "property" in *Whiting Pools.*

A broad interpretation of the property concept (and a restrictive view of the reach of the Tennessee garnishment statute) comports most completely with the philosophy of the Bankruptcy Code and the garnishment statute.[15] The Supreme Court stated this principal premise underlying the bankruptcy law in *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed. 124 (1970):

> The most important consideration limiting the breadth of the definition of "property" lies in the basic purpose of the Bankruptcy Act to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general

---

**14.** The key provision of the definition of property of the estate in 11 U.S.C. § 541 is that the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The operative language of § 547(b) at issue in this case states that the preference recovery power is triggered upon a finding of a transfer of "an interest of the debtor in property." 11 U.S.C. § 547(b). It is not obvious that Congress intended the phrase "interest of the debtor in property" in § 547(b) to be any more or any less extensive than the phrase "all legal or equitable interests of the debtor in property" used in § 541(a). More likely, the phrases mean the same thing; the major difference in effect is caused by the fact that the § 541 notion of property operates "as of the commencement of the case" and the § 547(b) notion of property operates as of the time of "any transfer."

We think the property of the estate cases like *Whiting Pools* are very instructive of what the definition of "interest of the debtor in property" should be for § 547(b) purposes. It seems clear that a debtor's interest in wages that are subject to a garnishment lien would be included in the

definition of property of the estate for § 541 purposes if the wages are due as of the commencement of the case. *But see* § 541(a)(6). It should follow logically that a property interest existed in the debtor during the 90 days before the petition for § 547 purposes each time the debtor earned wages subject to a garnishment lien.

The general principle at work here was stated by one United States District Court as, "A property interest protected by the Constitution appears to fall well within the ambit of § 541." *Morris v. Philadelphia Electric Co.,* 45 B.R. 350, 12 BANKR.CT.DEC. (CRR) 897, 898 (E.D.Pa. 1984). As is demonstrated above, a garnishee's interest in future wages is entitled by law to substantial due process protections in Tennessee. A debtor retains a property interest in those wages notwithstanding the garnishment lien and that property interest can be the subject of a § 547 action.

**15.** The Tennessee garnishment statute should be liberally construed in favor of the debtor. *See, e.g., Collier v. Murphy,* 90 Tenn. 300, 16 S.W. 465 (1891).

purpose and policy of the act." (citations omitted).

The availability of garnished wages as exempt property is a significant element in the debtor's "fresh start." GMAC's interpretation of the preference statute and the Tennessee garnishment law would constitute garnishment liens as a sort of "superlien." A creditor holding a garnishment lien would realize greater recovery in bankruptcy than other judicial lienholders. The special status argued for garnishment liens would encourage a "race to the courthouse" to obtain garnishments and effectuate execution.

In summary, we reaffirm *Eggleston* by holding that (1) under Tennessee law the debtor retains an interest in wages subject to a garnishment lien which constitutes "property" for § 547 purposes; and, (2) under § 547(e)(3) a transfer takes place when the debtor acquires an interest in the wages—when they are actually earned or when the debtor becomes entitled to the wages.

An appropriate order will be entered.