**In re William H. WALTERS, Linda K. Walters, Debtors.**

**William H. WALTERS and Linda Walters, Plaintiffs,**

v.

**M & H RENTALS, INC., an Idaho corporation, a/k/a Excell Corporation, Defendant.**

**Bankruptcy No. 282–00208. Adv. No. 282/0080.**

United States Bankruptcy Court, D. Montana.

May 15, 1986.

---

Harold Dye, Missoula, Mont., for plaintiffs.

Alan L. Joscelyn, Helena, Mont., for defendant.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

This matter is before the Court on an agreed statement of facts upon Debtors' complaint seeking to avoid a preference or set aside a fraudulent transfer.

The agreed facts are that in 1980, W.H. Walters leased from M & H Rentals, Inc., pursuant to a written lease agreement, a 1978 Mack Truck and a 1980 Knight Trailer. Mr. Walters failed to make the payments required by the lease agreement and the truck and trailer were repossesed by M & H Rentals and sold. After applying the sales proceeds, the sum of $22,639.30 remained due and owing to M & H Rentals under the lease agreement. M & H Rent-

als notified Mr. Walters of the sale, application of the proceeds and balance remaining and demanded payment. Payment was not made and M & H Rentals filed suit against Mr. Walters, in Idaho, for the balance due. Mr. Walters was served with process but failed to appear. M & H Rentals secured a default judgment against Mr. Walters on June 8, 1981, in the amount of $29,690.30.

On September 28, 1981, the Idaho judgment was registered as a foreign judgment in Malheur County, Oregon. At the time the judgment was docketed in Malheur County, the First Interstate Bank of Oregon, Ontario Branch, Ontario, Oregon (within Malheur County) held, as escrow agent, a contract for the sale of real property between W.H. Walters and Linda G. Walters, Sellers, and Jim and Fawn Rupp, Purchasers. The contract was for the sale and purchase of real property located in Idaho County, Idaho. The contract calls for the Walters to receive from the Rupps the amount of $378,420.00, to be paid in annual installments of $32,994.44.

On October 27, 1981, M & H Rentals had the First Interstate Bank of Oregon, Ontario branch, served with a Writ of Garnishment in an attempt to enforce its judgment. The Bank denied that it held any property belonging to the Walters. After some legal sparring between M & H Rentals and the Bank over whether the Bank held a property interest belonging to the Walters, M & H Rentals successfully accomplished enforcement of its judgment on March 26, 1982 and procured a sheriff's sale of Mr. Walters' interest in the contract. The sheriff's sale was held May 7, 1982. Mr. Walters' interest in the contract was purchased by Excell Corporation, a sister corporation of M & H Rentals, Inc. M & H Rentals, Inc. and Excell Corporation are to be regarded as the same entity for purposes of this adversary proceeding. The purchase price was the amount owing M & H Rentals under its judgment.

W.H. Walters and Linda Walters, d/b/a Walters Trucking, filed a petition under Chapter 11 of the Bankruptcy Code, and relief was ordered on June 2, 1982. Short-

ly thereafter, the Walters instituted the present adversary proceeding to have M & H Rentals' purchase of Mr. Walters' contract interest declared a preference or fraudulent transfer.

The following documents were entered in the record free of any objection:

1. Demand letter, with receipt from M & H Rentals to Mr. Walters, dated March 13, 1981.

2. Complaint, M & H Rentals v. Walters, April 1, 1981.

3. Affidavit of Service of complaint upon Mr. Walters, dated April 23, 1981.

4. Affidavit for Default, Application for Default, Default, Order Permitting Default Judgment, dated June 8, 1981.

5. Judgment dated June 8, 1981.

6. Affidavit of Richard Davies for registration of Idaho judgment in Oregon, dated September 1, 1981.

7. Certificate of Mailing of Documents to Mr. Walters, dated September 24, 1981.

8. Notice of Registration of Foreign Judgment in Oregon, dated September 28, 1981.

9. Clerk's Certificate of Mailing dated September 28, 1981.

10. Sheriff's Return of Writ of Garnishment, November 2, 1981.

11. Answer of Garnishee dated October 27, 1981.

12. Answer of Garnishee dated November 20, 1981.

13. Motion for Order Compelling Appearance by Garnishee, December 14, 1981.

14. Order for Examination of Garnishee, December 17, 1981.

15. Sheriff's Return of Order for Examination of Garnishee, December 30, 1981.

16. Allegations and Interrogatories to Garnishee, December 24, 1981.

17. Affidavit of Service of Writ of Garnishment (Allegations) and Interrogatories, December 24, 1981.

18. Garnishee's Memorandum in Opposition to Plaintiff's Allegations and Interrogatories to Garnishee, January 4, 1982 (includes copies of escrow documents).

19. Answer of Garnishee dated January 5, 1981 (sic.) filed January 8, 1982.

20. Affidavit of Service of Writ of Garnishment dated January 27, 1982 (writ of garnishment dated January 27, 1982 and notice of exempt property attached).

21. Answer of Garnishee dated January 27, 1982

22. Order Approving Cost Bill, March 5, 1982 (cost bill attached).

23. Writ of Garnishment, filed March 29, 1982.

24. Affidavit of Service of Writ of Garnishment upon First Interstate Bank of Ontario, dated March 26, 1982.

25. Affidavit of Service of Writ of Garnishment upon Farmers Home Administration dated March 26, 1982.

26. Answer to Garnishee dated March 26, 1982.

27. Notice to First Interstate Bank of Ontario, dated April 26, 1982, regarding sheriff's sale.

28. Notice of sheriff's sale.

29. Notice of Purchaser.

30. Affidavit of Service of Notice of Purchaser dated May 11, 1982.

The Debtors-in-possession Walters contend the sheriff's sale on May 7, 1982, being within 90 days of the order of relief in bankruptcy, was a preference under Section 547 of the Code. The creditor responds that the date of sheriff's sale is immaterial because the transfer under Section 547(e)(3) actually occurred when the Writ of Garnishment was issued, namely, October 27, 1981. The issue as phrased by the creditor is whether the transfer of Mr. Walter's vendor's interest in the Contract For Deed occurred within 90 days before the date of filing of the Walters petition in bankruptcy. The other five elements necessary to satisfy the preference, i.e., insolvency, the debtor-creditor relationship, an antecedent debt, transfer and greater distribution than under Chapter 7 liquidation have been conceded.

 The determination of perfection of the security interest must be made by reference to state law. *Palmer v. Radio Corp of America*, 453 F.2d 1133, 1138 (5th Cir.1971). Under Oregon statutory law, Section 29.135, "garnishment is the procedure by which a plaintiff on whose behalf a writ of garnishment has been issued against a defendant reaches tangible or intangible personal property of the defendant in the possession, control or custody of or debts or other monetary obligations owing by a third person". Section 29.205 provides:

"(1) Delivery of a writ of garnishment in accordance with Or.Stat. 29.155 to 29.185 shall be effective to garnish all property of the defendant which is in the garnishee's possession, control or custody at the time of delivery, including but not limited to property in safe deposit boxes, stock, debts, and other obligations then in existence and payable in money whether due or to become due, property held or expired bailments and leases, and property held by the garnishee pursuant to a security interest granted by defendant to garnishee."

By these statutes, the property, in this case the Debtors' one-half interest as vendor in the Contract For Deed, is reached, i.e., put in the hands of the sheriff for the benefit of the creditor and beyond the control of the Debtors at the time of delivery of the Writ of Garnishment. The Debtors in this case do not contend otherwise. It is important to note, however, that by the terms of the Writ of Garnishment, the third party must deliver to the sheriff the attached property in order for the garnishment to be satisfied. The record in this case shows

that the garnishment of October 27, 1981, was returned unsatisfied. It was not until the garnishment of March 26, 1982, that the contract interest of Walters was attached and subsequently sold. The first garnishment was unsatisfied because of a dispute over whether the contract interest of the vendor was capable of being attached. The second Writ of Garnishment issued by the Clerk of Court for the Court of Malheur, Oregon, to the First Interstate Bank, Ontario Branch, was the garnishment on which the sheriff's sale ultimately proceeded. The last garnishment was issued within 67 days of bankruptcy and thus the 90 day rule is satisfied because there was no perfection of the security interest outside the 90 day period.

There is yet a second reason based on federal law, to void the transfer, i.e., the sale of the Debtor's interest. The creditor relies on the cases of *In Re Riddervold*, 647 F.2d 342 (2nd Cir.1981), *In Re Maytag Sales and Service Inc.*, 23 B.R. 384 (Bankr. N.D.Ga.1982) and *In Re Tonyan Construction Company, Inc.* 28 B.R. 714 (Bankr.N. D.Ill.1983) to support its position of the so-called continuing lien theory, since it assumes the October 27, 1981, Writ of Garnishment was valid. The *Riddervold* case, together with *Askin Maine Co. v. Conner*, 733 F.2d 1560 (11th Cir.1984) and *In Re Coppie*, 728 F.2d 951 (7th Cir.1984), have come under criticism. See *In Re Perry*, 48 B.R. 591 (Bankr.M.D.Tenn.1985). The so-called "continuing levy" theory of *Riddervold* is not persuasive at least as it applies to wages. However, it is not applicable in this case because the first Writ of Garnishment was never satisfied by the sheriff, and thus a new Writ had to be issued.

As stated in *Perry*, id. at 597–598: "For the purpose of establishing whether a transfer is preferential, Congress enacted a specific criteria to identify when a transfer occurs. Section 547(e)(3) (reproduced in the margin above) represents a radical departure from practice under the Bankruptcy Act. Under the Act, it was unnecessary for the debtor to acquire rights in the property before a

transfer was complete. See e.g. *Grain Merchants of Indiana Inc. v. Union Bank & Savings Co.*, 408 F.2d 209 (7th Cir.) cert. denied 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969); *Dubay v. Williams*, 417 F.2d 1277 (9th Cir.1969). The legislative history reveals, however, that 547(e)(3) was added to overrule these cases and conform the Bankruptcy Code to the commercial practices applied under the Uniform Commercial Code. H.R. Rep. No. 595, 95th Cong. 1st Sess. 374 (1978), S.Rep. No. 989, 95th Cong. 1st Sess. 88 (1978). Nothing in the statutory language or the legislative history limits Section 547(e)(3) to security interests in after acquired property. It is illogical to refuse to apply 547(e)(3) to all plainly analogous situations.

\* \* \* \* \* \*

The transfer of a debtor's wages cannot occur until the debtor becomes entitled to be paid. See *Rowland* [v. Quarles], supra [20 Tenn.App. 470, 100 S.W.2d 991]. When the garnishment was originally executed, the creditor obtained nothing more than a lien on the debtor's right to receive wages if and when services were rendered and the wages earned. The date of transfer for the purposes of 547(e)(3), therefore, is the date the wages were actually earned. See *Matter of Morton*, 44 B.R. 750 (Bankr.N.D.Ga. 1984) (distinguishing *In Re Conner* [733 F.2d 1560]). *Riddervold, Coppie*, and *Conner* oversimplify the concept of 'property' for bankruptcy purposes.

\* \* \* \* \* \*

The multiplicity of property rights and interests was vividly recognized in the bankruptcy context by the Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). \* \* \* The court found that 'the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization.' Id. at 103 S.Ct. at 2315, 76 L.Ed.2d at 524. The rights and interests remaining in the debtor after levy and seizure by

the IRS in *Whiting Pools* were found by the Supreme Court to be sufficient interests to constitute property of the estate under Section 541 and to support recovery under Section 524. * * * In this court's opinion, *Eggleston* [v. Third National Bank in Nashville] (19 B.R. 280), is consistent with *Whiting Pools.* *Conner* and *Coppie* are not obviously reconciled with the discussion of 'property' in *Whiting Pools.*"

Such rationale on when transfer occurs for the purpose of applying Section 547, was followed in the case of *R & T Roofing Structures*, 42 B.R. 908, (Bankr.Nev.1984), where the court concluded in a case dealing with an IRS lien:

"While there undoubtedly was a 'transfer' when the Service's lien arose and the notice of lien was filed outside the preference period, to say no transfer occurred when the levy was made unnecessarily tortures the expansive language of Code Section 101(40). Ordinarily, because a fully secured creditor who enforces his lien within the preference period will not receive any more through enforcement than through the Chapter 7 distribution scheme, it may be said that no transfer occurs upon enforcement. But by virtue of the subordinating effect of 724(b), discussed infra, the Service, a secured creditor, did receive much more through its levy than it otherwise would have without it. In the sense of receiving 'more' a transfer did occur. At the very least, the debtors possessory property right to the cash was transfered upon levy. Accordingly, the court concludes the IRS levy constituted a 'transfer' for purposes of 547(b)."

In sum, there can be multiple transfers within and without the preference period. Levy of garnishment can be one transfer, and the sheriff's sale can be another transfer.

■ In this case, the contract seized and sold by the creditor called for Walters and his spouse to receive $378,420.00 in annual installments of $32,994.44. Walters' interest was thus $189,210.22. The contract would provide the sole basis for reorganization, as even M & H Rentals has so proposed. Like wages, the transfer of the Debtors' interest in the installment payments cannot occur until the installments are due and paid. Therefore, what the creditor levied and seized upon was the property right of the Debtors to after-acquired installment payments when earned. I believe such contract payments are property of the estate as that term was explained in *Whiting Pools*.

■ In addition, the actual transfer of ownership of Walters' contract rights did not occur until the sheriff's sale, well within the 90 day period. Even accepting the position of the creditor M & H Rentals that levy of garnishment occurred on October 27, 1981, the actual sale of the property occurred on May 7, 1982, when Excell Corporation purchased the contract right for the amount of the judgment. Under federal law, Section 101(40) of the Code dictates that the secured creditor received more on the date of the sheriff's sale than through its levy of garnishment. As noted earlier, the Writ of Garnishment puts the property beyond the reach of the Debtor, but ownership cannot transfer until sale by the sheriff. The garnishment perfects a security interest in the particular property which is seized, but it does not transfer ownership in that property to M & H Rentals. Acquiring ownership takes another transfer. I conclude, therefore, that the ownership interest in the Contract For Deed transfered on May 7, 1982, the date of the sheriff's sale, and such transfer is within the 90 day preference period. That ownership interest is voided under Section 547, leaving M & H Rentals as an unsecured creditor because of the voiding of the levy of garnishment of March 26, 1982. Even if the original levy of garnishment of October 27, 1981, is valid, the Debtor and his spouse are still the owners of the Contract For Deed, with M & H Rentals being a secured creditor, to be dealt with in the Plan of Reorganization.

IT IS THEREFORE ORDERED that the Clerk shall enter judgment in favor of the

Plaintiffs and against the Defendant and decree that the sale of W.H. Walters' contract interest in the Rupp contract by Malheur County, Oregon, Sheriff, on May 7, 1982, pursuant to Writ of Garnishment of March 26, 1982, is null and void under Section 547 of the Bankruptcy Code.

IT IS FURTHER ORDERED that the Debtors shall file their Disclosure Statement and Plan of Reorganization on or before May 30, 1986.